THE COMMONWEALTH CASUALTY COMPANY OF PHILA. *v.* WHEELER.

*Accident insurance — Death by freezing — Voluntary exposure to cold — "Accident" construed.*

A foreman, while walking from the factory to his home with the thermometer 20 degrees below zero, found that his face was frozen, and stopped at the home of his daughter, where he died a few minutes later. His physician testified that he was "frozen to death from exposure," and the record showed no antecedent physical injury. The company defended on the ground that even if it were true that he died as a result of freezing, no liability attached, for the reason that he voluntarily exposed himself to the cold, and his death, therefore, was not due to an accident.

*Held:* That upon reason and authority his death was due to "accident" within the meaning of the policy.

(Decided April 18, 1919.)

ERROR: Court of Appeals for Richland county.

*Mr. Harry T. Manner,* for plaintiff in error.

*Messrs. McBride & Wolfe,* for defendant in error.

SHIELDS, J.    In the court below the defendant in error, Melissa Wheeler, as beneficiary under a certain policy of accident insurance issued by the plaintiff in error to one C. Y. Wheeler, brought suit to recover of the plaintiff in error the sum of $600 for the death of the said C. Y. Wheeler, which occurred January 12, 1918, as the result of an accident from freezing while returning to his home on said day from his usual occupation and place of employment.

It is averred that his death was caused solely from freezing and due directly to "such injury" and that at the time of "such injury" and death, said policy was in full force and effect by the payment of premiums due thereon from time to time; that during his lifetime the said C. Y. Wheeler, and his wife, the said Melissa Wheeler, beneficiary under said policy, since the death of the said C. Y. Wheeler, each duly performed all the conditions of said policy on their part to be performed, and that although requested the plantiff in error has refused and failed to pay the amount named in said policy, according to its terms.    Judgment is prayed for accordingly.

Said company filed an answer admitting that Melissa Wheeler is the widow of C. Y. Wheeler, deceased, and that she was named as the beneficiary in a certain insurance policy issued by said company, and, except that the company is a corporation authorized to do business in this state, a general denial is made of the allegations in the petition.

For a second defense, after reciting the provisions of the policy contained in Sections 1 and 2 under the insurance clause therein, the company

denies that the cause of death of C. Y. Wheeler falls within the intent and meaning of Section 1; and further avers that "whatever injuries the said C. Y. Wheeler may have sustained, if any, were not caused from freezing to death as alleged in the petition of the plaintiff, and the same was not covered by the terms of said policy."

For a third defense the company avers "that the said C. Y. Wheeler died by reason of sickness and a diseased condition and not as a result of any accident, and had defaulted in his premiums due said company."

For a fourth defense the company avers that in the application made by C. Y. Wheeler for said policy of insurance, he stated, among other things, that he had never had any form of heart trouble, when in fact such statement was untrue, and that said C. Y. Wheeler had heart trouble and was not in sound condition of health at the time he made said application; that he had on certain occasions been treated for heart trouble and that at the time said application was made that fact was unknown to the defendant company but was known to said decedent.

For a fifth defense said company, after pleading the provisions of the policy in "C" under "Additional Provisions," avers that C. Y. Wheeler "did expose himself to obvious risk of injury or known danger which indirectly caused his death by reason of the weakened condition of his heart * * * that his death was not caused directly by said exposure, but the same was only the indirect cause thereof; that his death was caused directly by his diseased condition, and that if any liability exists

under this policy, under the terms thereof, the limit of liability would not exceed one month's indemnity of $60 and no more."

In a reply the plaintiff below admits that the policy contained the provisions quoted in defenses Nos. 2, 3 and 4 of the answer, but denies each and every other allegation therein contained.

Upon the submission of the case to a jury, a verdict resulted in favor of the plaintiff below, and upon a motion filed for a new trial, including a motion for judgment for the defendant below notwithstanding the verdict, the motions were overruled and judgment entered upon the verdict. A petition in error was filed in this court containing numerous assignments of error for a reversal of said judgment.

The principal contentions made on behalf of the plaintiff in error in argument were (1) that the death of the insured was not caused alone from freezing, as shown by the evidence, and therefore a liability on the part of said company did not arise under the terms of said policy; (2) or if his death was so caused, that it was caused by voluntary exposure to an obviously known danger, and therefore the indemnity named in said policy is not recoverable.

After reciting the consideration and premium paid and the statements made in the application for the issuance of the policy, it is provided therein that the company "does hereby insure C. Y. Wheeler of Mansfield, State of Ohio, * * * against:

"(1) The effects resulting directly and exclusively of all other causes, from bodily injury sustained during the life of this policy solely through

external, violent and accidental means (suicide, sane or insane, not included), said bodily injury so sustained being hereinafter referred to as 'such injury' * * * which said section with Section 2 provide for the amount of indemnity to be paid for specific losses expressly mentioned therein."

Section 5 of the policy, under "special rate indemnity," provides:

"If loss of life of the insured shall within ninety days from the date of exposure or infection, result solely from sunstroke, freezing or hydrophobia, due directly to 'such injury,' or if loss of life shall result solely from accidental drowning, the company will pay the full original principal sum."

As stated, under the defenses set up in Nos. 3, 4 and 5 of said answer, it is averred, among other things, that the said C. Y. Wheeler died by reason of sickness and disease, and that he was suffering from a weakened condition of his heart and that at the time he made application for said policy of insurance he falsely represented his condition of health. Under the facts disclosed in the record, we find no foundation whatever supporting these allegations.

It is charged in the petition that the death of the said C. Y. Wheeler was caused solely by freezing from exposure to the severe cold. It appears that the weather on the day of his death was about 20 degrees below zero; that on that morning he left his home in his usual health, walking some two and a half miles to a manufacturing industry in the city of Mansfield, Ohio, of which he was foreman; that on his return homeward before noon of said day he stopped on his way at the home of his daughter,

after walking perhaps some two miles, and on entering his said daughter's home he spoke of the severity of the weather and complained of portions of his face being frozen. Drawing near to a fire, he laid aside his mittens and hat, unbuttoned his outer coat, and after sitting on a chair and conversing for a period of about five minutes he suddenly and without warning fell to the floor. A physician was quickly summoned who pronounced life extinct.

Counsel on behalf of plaintiff in error argued that the death of said decedent was not shown to have been caused solely by freezing, that the pathological history of his case showed that he was afflicted with other ailments which contributed to his death. It is said that medical science is but an aid in determining the cause of one's death, and that in some cases at least, it appears to be beyond the domain of science or the power of human agency to define absolutely the cause of death, but without here theorizing, and without discussing the generally accepted opinion of the office and experience of the medical profession in this respect, when we consider the state of the decedent's health on that morning, prior to his death, as already indicated, the intense cold and the declarations of his physical condition when he entered his daughter's home, as testified to by the witnesses Thomas Dickerson and Ella Dickerson, his wife, the discoloration of his face and neck and certain portions of his body, and the opinion of Dr. R. R. Black, his former family physician who testified that "he was frozen to death from exposure," we do not hesitate to say that in our judgment the

jury on this issue might well find that decedent's death was due to freezing, as described in the plaintiff's petition.

Under the head of "Standard Provisions" it is provided in Section 8 of said policy:

"The company shall have the right and opportunity to examine the person of the insured when and so often as it may reasonably require during the pendency of claim hereunder, and also the right and opportunity to make an autopsy in case of death where it is not forbidden by law."

Here it appears that notice of the death of said decedent was given to the plaintiff in error soon after said death, and it likewise appears that no autopsy was made by said company nor was any requested to be made.

It was further argued on behalf of the plaintiff in error, as is averred in the second defense of said answer, that whatever injuries said decedent may have received by reason of his exposure on the day in question "the same were not covered by the terms of said policy." It is scarcely necessary to state that the application made to the company by the decedent in his lifetime was for a policy of indemnity to cover accidents, that such was contemplated by the contracting parties and that such a policy was issued to the insured. Commenting on the object and purpose of a contract for this kind of insurance, it is laid down in 1 Wood on Fire Insurance (2 ed.), 146, that:

"Indemnity is the real object and purpose of all insurance; that is what the assured bargains for, and what the assurer intends to provide. The predominant intention of the parties in a contract of

insurance is indemnity, and this is to be kept in view and favored in putting a construction upon a policy. Having indemnity for its object, the contract is to be construed liberally to that end, and it is presumedly the intention of the insurer that the insured shall understand, that in case of loss, he is to be protected to the full extent which any fair interpretation will give. The spirit of the rule is, that when two interpretations, equally fair, may be given, that which gives the greater indemnity shall prevail."

Here the insurance contract in the section heretofore referred to expressly provides for indemnity against death from freezing, hence the duty of construction does not arise and the rules which are designed to aid doubtful meanings require no discussion, but if there was room for such discussion such construction should be observed as would not defeat the intention of the contracting parties. *Traveler's Ins. Co.* v. *Myers & Co.,* 62 Ohio St., 529.

Of course the contract is to be considered as a whole, in all of its parts, and the general insuring clause, Section 1, providing against "effects resulting directly and exclusively of all other causes, from bodily injury sustained  *  *  *  solely through external, violent and accidental means" is to be considered in connection with said Section 5 providing for indemnity from freezing. We are then met with the inquiry, was the death of the said decedent caused "solely through external, violent and accidental means?" Both lexicographers and courts have defined the different words here used, and we find no difficulty in ascertaining their mean-

ing, the term "accident" being defined as "an event that takes place without one's expectation;" "an undesigned, sudden and unexpected event;" "an event which proceeds from an unknown cause or is an unusual effect of a known cause, and therefore unexpected." The term "accidental means," as employed here, as we understand it, means accidental cause, "means" and "cause" being intended to be used interchangeably. In the case of *U. S. Mut. Accident Assn.* v. *Barry,* 131 U. S., 100, which was an action on an accident insurance policy, Justice Blatchford in speaking for the court, when referring to "means" in connection with "accidental," says at page 121:

"That the term 'accidental' was used in the policy in its ordinary, popular sense, as meaning 'happening by chance; unexpectedly taking place; not according to the usual course of things; or not as expected;' that, if a result is such as follows from ordinary means, voluntarily employed, in a not unusual or unexpected way, it cannot be called a result effected by accidental means; but that if, in the act which precedes the injury, something unforeseen, unexpected, unusual occurs which produces the injury, then the injury has resulted through accidental means."

See also *Bryant* v. *Continental Casualty Co.,* 107 Texas, 582, 585, *et seq.*

With "means" and "cause" thus used synonymously, and so understanding them, applying the testimony of the witnesses heretofore mentioned to the facts and circumstances immediately preceding said decedent's death, the solution of the

main question presented here is relieved of much difficulty.

Recurring to Section 5, which provides that "if loss of life shall  *  *  *  result solely from sunstroke, freezing or hydrophobia, due directly to 'such injury,' or if loss of life shall result solely from accidental drowning, the company will pay the full original principal sum," all of these several questions are enumerated in the same paragraph in said section, for either of which said policy provides that the company shall be liable for said sum in case of accidental death. It might well be asked why these specified causes were inserted in and made a part of the insurance contract unless they were to be complied with, and, if not complied with, why they should not be enforced in case of death by accident the same as any other provisions of said contract. Why was freezing inserted in said policy unless it was intended to be among the risks assumed by said company and therein named as a form of bodily injury, if in the construction of the policy, as now argued, it is to be considered something other than a risk and therefore not embracing any element of bodily injury? In this connection, and in addition to the quotation from Wood on Insurance already given, we herewith also quote from the opinion in *Pack* v. *Prudential Casualty Co.,* 170 Ky., 47, which was an accident insurance case in which the policy issued by the company contained similar provisions to the policy here sued on, including freezing. The judge announcing the opinion of the court in that case, in commenting on the clause in the policy providing for indemnity

against accident, and the object of the insured in taking out said policy, says at page 54:

"Unless the clause in this contract providing indemnity against sunstroke is construed to embrace cases like the one we have, it is deceptive and misleading and fails to afford the protection its reading implies. If an insured who should suffer sunstroke when engaged in his usual occupation or in doing the things he usually does, is not to be protected by this clause in the policy, it has little beneficial meaning, for, according to the construction contended for, the insured would not be protected in any state of case unless the sunstroke happened while the insured was by accident or misfortune involuntarily placed in a position or surrounded by conditions that would subject him to the rays of the sun in an unexpected and unforeseen manner.

"It is of course true that sunstroke suffered in this way would be accidental, but not more so than would sunstroke suffered under ordinary conditions when it could not be reasonably anticipated or foreseen that it would happen.

"The very purpose of accident insurance is to protect the insured against accidents that occur when he is going about his business or attending to his work or affairs in the usual way without any thought of being injured or killed, and when there is no probability, in the ordinary course of human experience, that he will meet with accident or death. The reason why men secure accident insurance is to protect them against unforeseen and unexpected accidents that may happen in the ordinary course of their lives and when they are pursuing in the usual way their daily vocations, or doing in the

ordinary way the things that men do in the common, every-day affairs of life.

"Nearly all accidents happen when people are going about their business in the usual way and are voluntarily doing the things before them to do. There are many clauses in this policy protecting the insured against accidental injury or death, and if the argument of counsel is sound when applied to the sunstroke clause in the policy, there seems no good reason why the construction contended for should not embrace all the other indemnity features, with the result that the insured would find himself without protection against the very things for which he secured the insurance as indemnity."

To our minds, freezing was designated as one of the risks covered by said policy. Without extending this discussion further, it is sufficient to say that in our judgment these different clauses were inserted in the policy for a purpose—for the protection of the insured—and relying on the company's written promise to pay the full indemnity in case of accidental death, the policy was accepted and the premium due thereon was paid by the decedent.

Although it appears that the decedent was up to the time of his sudden death engaged in his usual business and work, returning to his home on the day in question, as was his privilege, with no antecedent physical injury suffered by him on said day or before, so far as the testimony shows, yet counsel for the company urge that he voluntarily and knowingly exposed himself to the intense cold and did just what he intended to do — returned to his home — when he knew of the state of the

weather, and thereby invited the result which befell him. True it is reasonable to suppose that he knew of the state of the weather in view of his going to work that morning, but it appears also that he was comfortably clothed with reference to such weather, and for aught that appears he may have walked the same distance under like conditions of weather before that time. In their brief, counsel for plaintiff in error quote the following from what is known as the cold plunge bath case, *New Amsterdam Casualty Co.* v. *Johnson, Admx.,* 91 Ohio St., 155, as tending to show that death was not caused by "accidental means," wherein Chief Justice Nichols, in announcing the opinion of the court, says at page 159:

"The attending physician in the case at bar says that the result which followed the bath, while unusual, was yet the direct and natural effect of the voluntary immersion of the body of the insured. The insured did nothing but that which he intended to do. He planned for and deliberately entered on the project, and, so far as appears, it was carried out precisely as intended. He did not slip or fall."

The principles of law applicable to the foregoing case are not, in our judgment, applicable to the case at bar. There the insured, after being out horseback riding, on returning to his home, took a cold plunge, as had been his custom, and in consequence of the shock caused to his system, by contact externally of the cold water in said plunge with his body, an acute dilation of the heart followed for several weeks. It will thus be seen that the insured in that case deliberately planned and created the condition that caused his death, a different condi-

tion from the case before us and clearly distinguishable from it, as we see it. Here the undisputed testimony is that the insured was returning to his home from his place of employment in his usual way, apparently unconscious of any danger from any exposure to the cold, with no apprehension of injury on that account, and doing nothing under his control to invite accident or injury, before he was stricken, as stated. His exposure to the cold may have been voluntary, but the result was wholly unexpected and did not follow as the "usual effect of a known cause." It was not the "natural and probable consequence" thereof as was held in *U. S. Mut. Accident Assn.* v. *Barry,* already cited. See also *U. S. Mut. Accident Assn.* v. *Hubbell,* 56 Ohio St., 516.

In the course of the hearing we were not cited by the plaintiff in error to any adjudicated case involving accidental death from freezing, nor have we been able to find any such reported case, but the following cases of sunstroke were cited, which in principle, in our judgment, are analogous to the case at bar and contain a statement of the law applicable to such case, and are of controlling effect, although it is but proper to state that courts in different jurisdictions in their holdings on this subject are not uniform, which is especially true as between the federal and state courts.

In *Gallagher* v. *Fidelity & Casualty Co.,* (163 App. Div., 556), 148 N. Y. Supp., 1016, which was a case of sunstroke, the company issued its policy of accident insurance insuring the person named therein "against bodily injury * * * through accidental means (excluding suicide, sane or in-

sane, or any attempt thereat, sane or insane), and resulting directly, independently and exclusively of all other causes." Among other things sunstroke and freezing were defined in the insuring clause of said policy to be "bodily injury" within the meaning thereof. In that case it was admitted by the defendant company that the insured suffered a sunstroke, but having exposed himself voluntarily, it was claimed that death of the insured was not due to "accidental means" within the terms of the policy. The appellate division of the supreme court, held (148 N. Y. Supp., 1016):

"An accident policy, insuring against bodily injury from accidental means, provided that sunstroke, suffered through accidental means, should be deemed bodily injuries. Insured, after being exposed to the sun's rays in the necessary conduct of his business, suffered a 'sunstroke' which is defined as an inflammatory disease of the brain, brought on by exposure to the too intense heat of the sun's rays, or to overheated air. *Held,* that, as insured while intending to be in the sun did not intend to produce a sunstroke, the sunstroke was an 'accident' which is an event that takes place without one's foresight or expectation, and hence was within the policy, being produced by 'accidental means' which are agencies that produce effects that are not their natural and probable consequences; the requirement that the sunstroke be produced by accidental means not requiring an accident to precede the sunstroke."

The above case was afterward taken to the court of appeals of New York, which court affirmed the judgment of the court below. 221 N. Y., 664.

*Bryant* v. *Continental Casualty Co.,* 107 Tex., 582, already cited, an interesting and instructive case, contains a lengthy discussion of the different phases of accident insurance law and cites numerous authorities pertaining thereto. The case was one of sunstroke or heat prostration, and the policy of insurance sued on, after providing against personal bodily injury "effected directly and independently of all other causes through external, violent and purely accidental means," also provides:

"If sunstroke, freezing, or hydrophobia, due in either case to external, violent and accidental means, shall result, independently of all other causes, in the death of the insured within 90 days from date of exposure or infection, the company will pay said principal sum as indemnity for loss of life."

It was held by the supreme court in the first proposition of the syllabus:

"Under a policy insuring against death from 'bodily injury effected directly and independently of all other causes, through external, violent, and purely accidental means,' with provision, under the title 'Special Accident Indemnities,' for payment in case 'sunstroke * * * due * * * to external, violent and accidental means, shall result * * *,' the beneficiary could recover for the death of insured from sunstroke suffered on a warm afternoon while walking the city streets in the ordinary course of his occupation as a collector of accounts."

And in the fourth proposition of the syllabus:
"Treating sunstroke as a form of bodily injury, rather than a disease, it should be considered as

due to 'accidental means' where the result was something unforeseen, unexpected, and out of the ordinary course, though arising from voluntary exposure of himself by insured. to solar heat."

In the opinion in said case, on page 594, Chief Justice Phillips says:

"A large number of injuries, plainly accidents, are suffered in the performance of intentional acts. Whether the immediately preceding act was intentional is a mistaken test of the question. The proper and true test, in all instances of voluntary action, is that defined in the Barry Case [heretofore referred to]. If in the act which precedes the injury, though an intentional act, something unforeseen, unexpected and unusual occurs, which produces the injury, it is accidentally caused."

*Continental Casualty Co.* v. *Clark,* 173 Pac. Rep. (Okla.), 453, was an accident insurance case, as its title implies, and paragraph 4 of the insurance contract in that case provided:

"If sunstroke, freezing, or hydrophobia, due in either case to external, violent or accidental means, shall result, independently of all other causes, in the death of the insured within ninety days from the date of the exposure or infection, the company will pay said principal sum as indemnity, for loss of life."

In affirming the judgment of the court below, the supreme court held:

"In an accident insurance policy which provides, 'If sunstroke, freezing, or hydrophobia, due in either case to external, violent or accidental means, shall result, independently of all other causes, in the death of the insured within ninety days from

the date of the exposure or infection, the company will pay said principal sum as indemnity for loss of life,' *held*, that 'accidental means' is used to denote 'accidental cause,' and in case of sunstroke, if the same was suffered while the insured was engaged in his usual avocation or going about his affairs in an ordinary manner as any other person might have been under like or similar circumstances, and did not intentionally and voluntarily subject himself to an intense heat calculated to produce sunstroke, with the knowledge that it would probably occur, then the sunstroke was suffered from 'accidental means' or 'accidental cause,' within the meaning of the policy."

The judge announcing the opinion in the case, when commenting on said paragraph 4, says at page 455:

"In view of the mechanical construction of paragraph 4 of the contract in question in placing sunstroke, freezing, and hydrophobia in the same paragraph and providing that in case of death caused by either due to external, violent, and accidental means the company would pay the principal sum as indemnity for loss of life, it being so very apparent that, if deceased had lost his life by freezing in such a way that death from said cause was without insured's expectations or was undesigned by him, or was an unusual happening from a known cause, the liability of the company would have been fixed and established, and this would have been true had deceased lost his life by hydrophobia, then why not when death resulted from sunstroke? Was not the sunstroke suffered by the deceased an event that took place without his expectation, un-

designed and unexpected? Is not this the reasonable construction to place on this contract, in the light of its context? If not, why was it placed in the same paragraph with the other two diseases or injuries, whichever you are pleased to call them, requiring this particular construction? To place any other construction upon this feature of the liability assumed by the company would practically read it out of the contract; and we therefore hold that inasmuch as the evidence tended to show that the deceased on the day in question was going about his affairs in an ordinary manner, was engaged in no unusual or unnecessary exposure, and the sunstroke was without the expectation of the insured, was undesigned by him, and was an unusual happening, the same was suffered by 'external, violent, and accidental means' within the meaning of the policy; and we accordingly hold that the defendant was liable upon this contract under the evidence adduced at the trial."

Other cases were cited by counsel sustaining the same doctrine laid down by the foregoing authorities, but which we do not deem it necessary to analyze or refer to. As against these, authorities are cited by counsel for plaintiff in error upholding a contrary doctrine in which sunstroke is held to be a form of disease, and classifying freezing in the same category of alleged accidents as sunstroke, counsel contending that freezing, as here claimed and shown, does not fall within the terms of the policy sued on. As before stated, while the decisions of the courts have not been uniform in their holdings on this question, we are of the opinion that upon both reason and principle the weight of au-

thority is that the cause of death here ascribed, to-wit, "freezing," disassociated with all other causes, is death suffered from accidental means or accidental cause within the meaning of said policy.

Counsel for plaintiff in error urge that the court below erred in permitting one W. C. Wappner, a witness for the plaintiff below, to give the jury his opinion as to the cause of death of the insured (page 15, bill of exceptions). The witness testified that he had been engaged as undertaker and embalmer for some ten years and had known the decedent for that period of time, and that he prepared his body for burial in the early afternoon of the day of his death. After describing the physical condition of decedent's face, neck and body, he was asked if he could give the cause of decedent's death. The record shows that this question was objected to, and on being overruled an exception was taken. Thereupon the witness answered, "I judge that he was frozen to death." While perhaps the witness did not qualify as an expert, his answer was not responsive to the question asked, and, had he first stated that he could give an opinion, his answer was only a qualified one, and, further, his testimony was cumulative at most. We do not regard the action of the trial court as working any prejudicial error to the interests of the plaintiff in error.

In the petition in error one of the grounds of error assigned therein is that the trial court erred in its charge to the jury, and in their argument counsel for plaintiff in error urged that said court refused to give in charge to the jury a certain request submitted on behalf of the defendant below. While the bill of exceptions recites that "counsel

for defendant requested that the court charge the jury before argument, which request was granted," we find no copy of such request set out in or attached to the bill of exceptions, and it nowhere appears that such request, if made, was in writing, which must affirmatively appear to insure action thereon by a reviewing court.

Under the foregoing review of this case we deem it unnecessary to state that we find no error in the action of the court below in overruling the motion of the defendant below to direct the jury to return a verdict for the defendant at the close of the evidence given on behalf of the plaintiff below and renewed at the close of all the evidence in the case, nor in overruling said defendant's motion for a new trial, nor its motion for a judgment in its favor *non obstante veredicto,* nor do we find any prejudicial error in the charge of the court to the jury, nor in the record, and, so finding, the judgment of the court of common pleas will be affirmed.

*Judgment affirmed.*

HOUCK and PATTERSON, JJ., concur.