NATIONAL LIFE INSURANCE CO. *v.* PATRICK.

(Decided December 5, 1927.)

*Mr. H. E. Elliott,* for plaintiff in error.
*Mr. S. B. Fitzsimmons,* for defendant in error.

SULLIVAN, P. J.   This cause is here on error from
the Court of Common Pleas of Cuyahoga county,
and it is sought to reverse the judgment rendered
there in favor of the plaintiff, George Patrick, and
against the defendant, the National Life Insurance
Company.

The plaintiff had a policy of insurance with the
defendant issued May 22, 1923, and on January 5,
1924, while the policy was in effect, while working
for the Albright Coal Company, hauling coal, and
while attempting to make a delivery of the same,
the wagon wheels sank into the mud, as the ground
was not sufficiently frozen to support the wheels on
the surface, although there was a blizzard and the
weather was cold.   He proceeded to unload two tons
of coal, consuming about an hour and a half of
time, and he discovered, as the unloading was about
completed, that the fingers of one of his hands were
frozen stiff, and thereupon he went into a store and
had them treated by administering of coal oil.   On
January 10, 1924, parts of all his fingers and thumb
of the right hand, and parts of all his fingers of the
left hand, excepting the thumb, were amputated by
a surgeon, by reason of their freezing while doing
the work herein noted.

The final proofs of claim were dated April 8, 1924,
and April 4 was given as the date of the last treat-
ment by the surgeon, although it appears that a
nurse gave some electrical treatment up as late as

April 17, and also on May 17. There was no further proof of claim filed after April 8, 1924.

The present suit is based upon a claim for compensation under the policy for the month of June, 1924, and subsequent months.

The plaintiff rested after establishing the above facts. The defendant then moved for a directed verdict in favor of the defendant, and this motion was overruled. The defendant rested and renewed its motion, which was again overruled, whereupon the court, on its own motion, directed a verdict in favor of the plaintiff for $385, which was the amount claimed in the petition for the month of June, 1924, and subsequent months.

Error is charged because of the directing of this verdict, and two reasons are given:

First. That the facts do not establish an accidental freezing.

Second. That under paragraph A of the policy and the admitted facts no liability arises.

Paragraph A is as follows:

"Total Accident Disability—A"

"At the rate of $35 per month for the period not exceeding 5 consecutive years, that bodily injuries effected during the life of this policy solely through external, violent, and accidental means shall, directly and independently of all other causes, wholly and continuously from date of accident, disable and prevent the insured from performing every duty pertaining to his business or occupation and require and receive at least once in each 7 days the attendance of a legally qualified physician or surgeon, but shall not result in any of the losses mentioned in paragraph 'C.' "

After the accident one suit was commenced to recover for the period which had expired from the date of the accident to the time of filing the lawsuit, and there was a recovery had in said action for the plaintiff, and later the present suit was filed for the period from June, 1924, to April, 1925, at the rate of $35 per month, and a recovery was had upon the directed verdict as herein noted.

The first claim is that the freezing of the fingers was not accidental. This court has heretofore defined what an "accident" is under the terms of an insurance policy, and it again cites the following definitions:

"Accident is defined by Worcester to be an event proceeding from an unknown cause or happening without the design of the agent; an unforeseen event; incident; casualty; chance;" so that death is accidental where the injury was not designed nor the danger known. *Burkhard* v. *Travellers' Ins. Co.*, 102 Pa., 262, 268, 48 Am. Rep., 205.

"Accidental signifies 'Happening by chance or unexpectedly; taking place not according to the usual course of things; casual; fortuitous. We speak of a thing as accidental when it falls to us as by chance and not in the regular course of things; as an accidental meeting, an accidental advantage.' " *North American Life & Accident Ins. Co.* v. *Burroughs,* 69 Pa. (19 P. F. Smith), 43, 51, 8 Am. Rep., 212.

An accident is " 'an event happening without the concurrence of the will of the person by whose agency it was caused;' 'any event that takes place without one's foresight or expectation;' 'anything occurring unexpectedly, or without known or as-

signable cause;' * * * 'that which happens without one's direct intention.' * * * The opposite of accident is design, volition, intent." *Ætna Life Ins. Co.* v. *Vandecar,* 86 F., 282, 285, 30 C. C. A., 48.

The word "accident" in its popular meaning means "a casualty—something out of the usual course of events, and which happens suddenly and unexpectedly, and without any design on the part of the person injured." *Richards* v. *Travelers' Ins. Co.,* 89 Cal., 170, 26 P., 762, 23 Am. St. Rep., 455.

" 'Accidental' is that which happens without design or expectation." *Williams* v. *United State Mutual Accident Association,* 60 Hun, 580, 14 N. Y. S., 728.

From these definitions it is our holding that under the facts in the case the injury was due to accidental means. Had the plaintiff's fingers come in contact with a hot iron without any volition and in an unusual and unexpected manner, there would be no question that the injury resulted from accidental means. Because the injury arose from a freezing atmosphere, the disastrous result of which was unusual and unexpected, the cause of the injury was no less an accident. In one case it is heat, and in the other case it is cold, and from the evidence in the case it appears that there was no reason for plaintiff believing that his fingers would freeze to the point where amputation was necessary, simply because the weather was cold. There is no evidence that he was reckless in caring for himself as much as was possible while he was performing his work in the freezing cold weather. Hence we think, under the record, that the injury resulted from accidental

means. It further appears, referring again to paragraph A of the policy, that the result of the accident disabled and prevented the insured from performing every duty pertaining to his business or occupation, which was that of a driver of a coal wagon and a heaver of coal.

It is claimed, however, that inasmuch as under paragraph A the injuries must be such as to require and receive at least once in each seven days the attendance of a legally qualified physician or surgeon, there is no liability and can be no recovery, because the evidence is silent as to that part of paragraph A just quoted, but, under the record, however, it appears that when the fingers of the hands healed there was no necessity for surgical attention every seven days. This clause is unreasonable because his recovery would depend, after the loss of his fingers, which disabled and prevented him from following his calling, upon his requiring and receiving surgical attendance every seven days, when it was not necessary.

One of the purposes of this clause undoubtedly was to establish the good faith of the claim and the extent of the injuries, but there is here no question about the good faith, and no question about the extent of the injuries. Hence, it is our judgment, under the record in this particular case, that the plaintiff would be entitled to recover. One of the purposes, and perhaps the main purpose of this clause, was to gauge the extent of the injury and the honesty of the claim, but, with the fingers amputated, there is no question as to the extent of the injury or the honesty of the claim, and it would be futile to require surgical attention every seven days

where there was no necessity, and it appears to us as absurd to claim that, even though there was no necessity for surgical attention, yet if the injury required and received surgical attention every seven days, then and thereupon the plaintiff could recover.

Referring again to the question whether the injury was caused by an accident, we add that unquestionably all cases of freezing are not necessarily accidents. If the insured had imperiled himself in weather that was unusually cold or extremely severe and to the extent that its severity would be sufficient notice of its danger, then it might be said and could be said with reason, that the injury was not caused by an accident, but there is no such situation appearing in the present record, and it would be absurd so to claim, as one of the reasons that the wheel of the wagon sank was because of the unfrozen condition of the highway. From the labor to which apparently the plaintiff below was accustomed, he was inured to the weather, and had no reasonable ground for apprehending dangerous results by reason of the condition of the temperature as it existed on the day of the accident. We confine ourselves, in the determination of the issues in this case, to the record itself, and do not make a holding as to any other general facts or conditions not existing in the record.

In the case of *Commonwealth Casualty Co. of Philadelphia* v. *Wheeler,* 13 Ohio App., 140, it was held by the Court of Appeals for Richland county that, even where the temperature was 20 degrees below zero, under the facts in that case—not substantially dissimilar to those in the case at bar—that circum-

stance did not preclude the insured from claiming death due to an accident under the terms of an accident policy. The syllabus thereof is as follows:

"A foreman, while walking from the factory to his home with the thermometer 20 degrees below zero, found that his face was frozen, and stopped at the home of his daughter, where he died a few minutes later. His physician testified that he was 'frozen to death from exposure,' and the record showed no antecedent physical injury. The company defended on the ground that even if it were true that he died as a result of freezing, no liability attached, for the reason that he voluntarily exposed himself to the cold, and his death, therefore, was not due to an accident.

"Held: That upon reason and authority his death was due to 'accident' within the meaning of the policy."

Shields, J., who wrote the opinion in the case just cited, at page 148, quotes the following language, which we think applicable to the case at bar, from the case of *U. S. Mutual Accident Association* v. *Barry,* 131 U. S., 100, 9 S. Ct., 755, 33 L. Ed., 60:

"That the term 'accidental' was used in the policy in its ordinary, popular sense, as meaning 'happening by chance, unexpectedly taking place, not according to the usual course of things, or not as expected;' that if a result is such as follows from the ordinary means, voluntarily employed, in a not unusual or unexpected way, it cannot be called a result effected by accidental means; but that if, in the act which precedes the injury, something unforeseen, unexpected, unusual, occurs which produces the injury, then the injury has resulted through accidental means."

On page 153 of the *Commonwealth case,* the case of *Gallagher* v. *Fidelity & Casualty Company,* 163 App. Div., 556, 148 N. Y. S., 1016, is cited. The policy- under construction there, among other things, had incorporated sunstroke and freezing in the insurance clause of the policy, and the company admitted that the insured suffered a sunstroke, but argued that he had exposed himself voluntarily, and that, therefore, the death was not due to accidental means within the terms of the policy. The Appellate Division of the Supreme Court held as follows, as quoted in the *Commonwealth Casualty Company case, supra*:

"An accident policy, insuring against bodily injury from accidental means, provided that sunstroke, suffered through accidental means, should be deemed bodily injuries. Insured, after being exposed to the sun's rays in the necessary conduct of his business, suffered a 'sunstroke' which is defined as an inflammatory disease of the brain, brought on by exposure to the too intense heat of the sun's rays, or to overheated air. *Held,* that, as insured while intending to be in the sun did not intend to produce a sunstroke, the sunstroke was an 'accident' which is an event that takes place without one's foresight or expectation, and hence was within the policy, being produced by 'accidental means' which are agencies that produce effects that are not their natural and probable consequences; the requirement that the sunstroke be produced by accidental means not requiring an accident to precede the sunstroke."

Able counsel for plaintiff in error cites 45 Insurance Law Journal, p. 71, and we read in that authority this language from *Lenarick* v. *National Casu-*

*alty Co.,* by the Minnesota district court, which decided said case as follows:

"But, that if, in the act which precedes the injury, something unforeseen, unexpected, unusual occurs which produces the injury, then the injury has resulted through accidental means."

Thus we think that under the record in this case this authority supports the position of the court.

This is the view we take of this case, and hence the judgment of the lower court is hereby affirmed.

*Judgment affirmed.*

LEVINE and VICKERY, JJ., concur.