AMERICAN CASUALTY COMPANY,
Plaintiff-Appellee,

v.

George W. TIMMONS, Defendant-
Appellant.

No. 16186.

United States Court of Appeals
Sixth Circuit.

Nov. 8, 1965.

John H. Leddy, Columbus, Ohio, for appellant, Porter, Stanley, Treffinger & Platt, Lawrence D. Stanley, Columbus, Ohio, on brief.

William E. Knepper, Columbus, Ohio, for appellee, Knepper, White, Richards & Miller, John A. Jenkins, Hugh A. Sherer, Columbus, Ohio, on brief.

Before WEICK, Chief Judge, CELEBREZZE, Circuit Judge, and CECIL, Senior Circuit Judge.

CELEBREZZE, Circuit Judge.

The Appellee, American Casualty Company, hereinafter referred to as Insurance Company, initiated this action by filing a petition for declaratory judgment wherein it sought to have determined the rights and liabilities of the parties under a comprehensive liability insurance policy issued to Appellant, George W. Timmons, hereinafter referred to as Timmons. Timmons, a general contractor, entered into a construction contract with the Department of the Army to construct a building at Wright Patterson Air Force Base, Dayton, Ohio. The contract incorporated a set of plans of the building to be constructed. The plans called for excavation near an electrict duct weighing approximately 600 pounds per lineal foot.

Timmons subcontracted the excavation work to Henry Jergens, an independent contractor. While performing the excavation, Jergens exposed the electric duct. The danger of a possible collapse was foreseen by Government inspectors who told Timmons' employees to shore the electric duct. Timmons' employees placed approximately eighteen metal and wood braces against the bank supporting the duct. After a rain the shoring gave way and the electric duct collapsed into the excavation.

The total loss to Timmons for making permanent repairs was $19,698.76. Timmons presented a claim against the Insurance Company under its comprehensive liability policy.

The pertinent provisions of that contract are:

"American Casualty Company of Reading, Pennsylvania

"Agrees with the insured, named in the declarations made a part hereof, in consideration of the payment of the premium and in reliance upon the statements in the declarations and subject to the limits of liability, exclusions, conditions and other terms of this policy:

"Insuring Agreements * * *

"Coverage D-Property Damage Liability—Except automobile

"To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, caused by accident. * * * .

"Exclusions

"This policy does not apply:

"(a) to liability assumed by the insured under any contract or agreement except under coverages B and D, of contract as defined herein: * * *

"(g) under coverage D, to injury to or destruction of (1) property owned or occupied by or rented to the insured, or (2) except with respect to liability under sidetrack agreements, property used by the insured or (3) except with respect to liability under sidetrack agreements and the use of elevators or escalators at premises owned, rented or controlled by the named insured, property in the care, custody or control of the insured, or (4) any goods or products manufactured, sold, handled or distributed or premises alienated by the named insured, or work completed by or for the named insured, out of which the accident arises: * * * "

"No. 2 Endorsement

"Exclusion of Property Damage Liability Arising from Certain Explosion, Collapse and Underground Hazards

"The provisions of this endorsement apply only to insurance afforded by the policy for Property

Damage Liability other than automobile stated as Coverage B in the Comprehensive Liability Policy.

"In consideration of the policy premium, it is agreed that, except as respects work or operations performed for the named insured by independent contractors, this policy does not apply to: * * *

"(c) collapse of or structural injury to any building or structure due to excavation, tunneling, pile driving, coffer-dam work or caisson work, or to moving, shoring, underpinning, raising or demolition of any building or structure, or removal or rebuilding of any structural support thereof; * * * *"

The District Court found that the collapse of the electric duct was not an accident as the term was used in the policy and entered judgment for the Insurance Company.

The first question presented is whether the collapse of the duct was an accident within the terms of the policy. The word "accident" in an insurance policy has received many definitions which are conflicting and difficult to apply. The Ohio courts have considered and determined the scope of the word "accident" in liability policies.

In Rothman v. Metropolitan Casualty Insurance Co., 134 Ohio St. 241, 16 N.E. 2d 417, 117 A.L.R. 1169 (1938), the question was whether there was liability under the terms of a policy for damages in consequence of an accident resulting from wanton misconduct. The liability policy insured against loss resulting from claims for damages in consequence of an accident. The Court, referring to Messersmith v. American Fidelity Company, 232 N.Y. 161, 133 N.E. 432, 19 A.L.R. 876 (1921), said:

"The very pertinent statement is there made that injuries are accidental or the opposite for the purpose of indemnity according to the

quality of the results rather than the quality of the causes."

The Court goes on to say:

"In our opinion, only those acts which are not motivated by an intent and purpose to injure are to be regarded as covered by the terms of this policy."

The Court stressed the fact the word negligence was not used in the policy. The word accident was said to be a more comprehensive term than negligence, and means "an unexpected happening without intention or design". Since there was no limitation implied in the policy, and the injury was not intentionally caused, then it was accidentally suffered.

Insurance Company relies upon Burns v. Employers' Liability Assurance Corp., 134 Ohio St. 222, 16 N.E.2d 316, 117 A.L. R. 733 (1938). The question there was whether death caused by amebic dysentery, contracted from drinking water infected by the breaking of a sewer pipe, was the result of a bodily injury sustained by accidental means. Because the policy covered only injuries sustained by accidental means, it was necessary for the Court to draw a distinction between injuries due to accidental external means and accidental results. "The element of accident", said the Court, "must be found to exist in the means or cause which produced the bodily injury rather than in the result". It is important to note this case was decided seven days before the Rothman case, supra.

Similar to the policy in the Burns case, supra, are Hassay v. Metropolitan Life Insurance Co., 140 Ohio St. 266, 43 N.E. 2d 229 (1942) and National Life Insurance Co. v. Patrick, 28 Ohio App. 267, 162 N.E. 680 (1927). In the Hassay case, supra, the Court said:

"The policy in question is not intended to cover all accidents. It does not cover accidental death alone. There must be accidental means shown by the plaintiff which produced the death of John Hassay."

The crucial language of the policy in Rothman is decisively different from the language in the policies in Hassay and National Life Insurance Company. The rational of Rothman is controlling in this case. The Rothman decision was cited and followed in the recent case of Munchick v. Fidelity & Casualty Co., 2 Ohio St.2d 303, 209 N.E.2d 167 (1965). There the question was whether a theft of a car was covered under an insurance policy for loss by theft. Loss was defined by the policy as accidental loss. The Court in reversing the lower Court stated:

> "Defendant claims that the loss of plaintiffs' automobile was not a 'loss' as that term is defined in the policy.
>
> " 'Loss' means direct and accidental loss of or damage to (a) the automobile including its equipment.
>
> "The term, 'accidental,' as used in an insurance policy means 'an unexpected happening without intention or design.' Its inclusion makes it clear that the insured is not protected against loss resulting from his own intentional and malicious acts. Rothman v. Metropolitan Casualty Ins. Co., 134 Ohio St. 241, 247, 16 N.E.2d 417, 117 A.L.R. 1169. The fact that plaintiff voluntarily delivered the automobile and an executed certificate of title to the wrongdoer would not preclude recovery under the policy. Only losses which are intentionally caused by the insured are excluded from coverage."

This Court in Bundy Tubing Co. v. Royal Indemnity, 298 F.2d 151 (C.A.6, 1962) had before it a similar policy. The Court said:

> "The word 'accident' is common in most liability policies and should not be construed in this type of case as not including claims involving negligence or breach of warranty."

Corbetta Construction Co., Inc. v. Michigan Mutual Liability Co., 20 A.D. 2d 375, 247 N.Y.S.2d 288 (1964), aff'd. 15 N.Y.2d 888, 258 N.Y.S.2d 423, 206 N.E.2d 357 (1965), is similar to the facts in the present case. There the plaintiff entered into a construction contract with the United States to reconstruct and enlarge a dry dock at Brooklyn Navy Yard. To protect a Navy building the plaintiff built a cofferdam. The Navy notified plaintiff that plaintiff was failing to properly control the water pressure against the cofferdam. This hazardous condition continued until an uncontrollable break caused serious damage to a Navy building. The Insurance Company contended that since the result was not only foreseeable but foreseen, the damage was not the result of an accident. Relying on Messersmith v. American Fidelity Company, supra, the Court held that the damage "was the result of plaintiff's negligence, and as a matter of law it constituted an accident within the terms of defendant's policy".

■■ The concept of negligence include the element of foreseeability. This does not mean the result of a negligent act is not an accident. Though negligence can be attributed to Timmons, the collapse of the electric duct was without intention or purpose on the part of Timmons. The most logical inferences to be drawn from the conduct of Timmons show intention and purpose to prevent damage. The main purpose of the shoring was to prevent the collapse. We are of the opinion that where there is a negligent attempt to prevent damage, unless there is a showing of an intentional or designed course of conduct, recovery is not barred under the terms of an insurance policy which provides:

> "To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, caused by accident."

There being no such showing, the Court erred in its finding.

■ Insurance Company next contends that the insurance policy was not applicable because the electric duct was

in the "care, custody or control" of the insured. The District Court ruled it was not. We are in accord with the District Court's finding. The duty owed by Timmons not to damage the electric duct was merely incidental to the construction of the building. In International Derrick and Equipment Company v. Buxbaum, 240 F.2d 536, 538 (C.A.5, 1957), the Court said:

"* * * Where the property damaged is merely incidental to the property upon which the work is being performed by the insured, the exclusion is not applicable."

In Innis v. McDonald, Ohio Com.Pl., 150 N.E.2d 441, aff'd. Ohio App., 150 N.E.2d 447 (1956) the Court stated:

"In this connection, we conclude that in the ordinary use of the English grammar, one does not speak of everything to which a duty of care is owed as being 'in' the care of the person owing such duty. Customarily when one speaks of something being in the 'care, custody or control' of another, reference is had to a legal relationship akin to that of ownership, tenancy or bailment."

The electric duct was not property in the "care, custody or control" of Timmons, and consequently this provision did not apply to exclude coverage. See also Pickard Trucking Co., Inc. v. General Accident Fire & Life Assurance Corp., Ltd., 113 Ohio App. 445, 169 N.E. 2d 499 (1960).

■ The next question presented by the Insurance Company is whether there is exclusion for damages due to shoring. The pertinent language of the policy provides as follows:

"In consideration of the policy premium, it is agreed that, except as respects work or operations performed for the named insured by independent contractors, this policy does not apply to: * * *

"(c) collapse of or structural injury to any building or structure due to excavation, tunneling, pile driving, •

cofferdam work or caisson work, or to moving, shoring, underpinning, raising or demolition of any building or structure, or removal or rebuilding of any structural support thereof: * * * "

In the instant case we have the paradox that if Timmons had not acted and the collapse occurred as the result of the excavation by the independent contractor, there would be recovery under the policy. The Insurance Company denies liability under the policy, even though the excavation in the instant case was being performed by an independent contractor, for the reason that Timmons took steps, even though such steps later proved inadequate, to prevent such collapse. There is no question that the damage was caused by the excavation and not by the shoring. The shoring was placed to prevent the collapse, not cause it. It is admitted that the excavation work was being performed by an independent contractor and not Timmons. The only claim that can be made is that the employees of Timmons were negligent in not foreseeing that the shoring would be inadequate.

The Court finds that recovery is not barred since the excavation work was being performed by an independent contractor and falls within the exception provision of the policy.

■ Insurance Company further contends that under the provisions of a comprehensive liability policy issued to Timmons, containing an exclusion provision reading:

"This policy does not apply:

"(a) to liability assumed by the insured under any contract or agreement except under coverages B and D, of contract as defined herein:"

and where said policy defined the term "contract" as follows:

"(a) Contract. The word 'contract' means a warranty of goods or products or, if in writing, a lease of premises, easement agreement, agreement required by municipal

568

ordinance, sidetrack agreement, or elevator or escalator maintenance agreement."

There is excluded from coverage losses due to damage to structures, because the liability incurred arises under contract. The contention that this exclusion provision of the policy applies here is without merit.

The contract between Timmons and the United States contained the following provision:

"(b) Permits and Responsibility for Work. The Contractor shall * * * be responsible for all damages to persons or property that occur as a result of his fault or negligence in connection with the prosecution of the work * * *"

Timmons was liable to the Government under the contract for damage caused by negligence. The liability here was one imposed by law. Timmons would have been liable for negligence in the absence of contractual liability. The very purpose of the insurance policy was to protect against liability arising from such negligence. See L. L. Jarrell Construction Company, Inc. v. Columbia Casualty Company, D.C., 130 F.Supp. 436 (1955); United States Fidelity & Guaranty Co. v. Virginia Engineering Co., Inc., 213 F.2d 109, 63 A.L.R.2d 1114 (C.A.4, 1954); Bundy Tubing Company v. Royal Indemnity Company, supra.

The final contention raised by the Insurance Company is whether Timmons can maintain an action under the policy where the policy provides that:

"No action shall lie against the company unless, as a condition precedent thereto, * * * the amount of the insured's obligation to pay shall have been finally determined either by judgment against the insured after actual trial or by written agreement of the insured, the claimant and the company.

"Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy."

The Insurance Company contends that it is not liable to Timmons because the Government did not obtain judgment against him.

Timmons' contract with the Government provided in the Disputes Clause that the contracting officer would first consider any disputes between the parties. The appeal procedure then to be followed was an appeal to the Chief of Engineers, United States Army, then an appeal to the Secretary of the Army, and finally to the Courts.

In connection with the collapse of the electric duct, the Government made temporary repairs costing $4,861.94. This amount was withheld from Timmons by the Government. Timmons made permanent repairs costing $14,836.82. Timmons filed a claim against the United States to recover $19,698.76. Timmons appealed from the adverse decision of the Contracting Officer of the Corps of Engineers Claims and Appeals Board. The decision of the Contracting Officer was affirmed. No further action was taken.

The Defense Provision of the policy here in question provides, in part, as follows:

"II. Defense, Settlement, Supplementary Payments.

"As respects the insurance afforded by the other terms of the policy the company shall:

"(a) defend any suit against the insured alleging such injury, sickness, disease or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; but the company may make such investigation, negotiation and settlement of any claim or suit as it deems expedient;"

This provision gives the insurer the right to assume control of the defense of

an action against the insured to the exclusion of the latter. This right is accompanied by the correlative duty to defend the insured. If the insurer unjustifiably refuses to defend the suit, the insured may make a reasonable settlement, and is entitled to recover from the insurer. While settlement is not conclusive upon the insurer as to the question of coverage under the policy, a judgment is no longer a condition precedent. See 7A, Appleman, Insurance Law and Practice, Sections 4681, 4682, and 4690. In Cross Properties, Inc. v. Home Indemnity Company, 41 Misc.2d 822, 246 N.Y.S.2d 683 (1964), the Court held that a

"Liability policy provision that no action would lie against the insurer until amount of insured's obligation was finally determined either by judgment against the insured after actual trial or by written agreement of insured, claimant, and insurer, did not preclude suit to recover amount of judgment rendered against insured on confirmation of arbitration award."

Apparently because of the above provision of the policy, the Insurance Company represented Timmons before the Claims and Appeals Board of the Office of the Chief of Engineers. The following letter was sent by the Insurance Company to Timmons on September 6, 1955:

"In connection with the above entitled matter, claim has been made for coverage under your policy CL 82804.

"While there is some question in our mind as to whether or not the damage referred to above was the result of an accident as defined in our policy, we are at this time proceeding to file on your behalf a request for a complete hearing before the Claims and Appeals Board of the Office of the Chief of Engineers, Department of the Army, Washington, D. C.

"By doing this, we are in no way waiving any of our rights or defenses under the contract of insurance issued to you. In due course you will receive correspondence from our Washington attorneys indicating what further steps should be taken by you."

The facts here are not similar to the facts where an insured voluntarily settles a claim and then seeks recovery from his insurer. Here Timmons did not voluntarily settle with the Government. Timmons had no choice when the Government withheld moneys from him. Nor did Timmons have any choice when the Government required him to repair the duct. Timmons could not require the Government to sue and obtain judgment against him. The only procedure open to Timmons was the appeal procedure provided for in the Disputes Clause. This procedure was followed with the Insurance Company not only assuming the responsibility of appealing, but also assuming the responsibility of conducting the hearing before the Army Engineers Claims and Appeals Board. This was the only way in which the liability of Timmons could be determined. In the letter of September 6, 1955, the Insurance Company informed Timmons it would tell Timmons what further steps should be taken. The Insurance Company did not appeal to the Secretary of the Army, and did not advise Timmons to so appeal. The Insurance Company having assumed the responsibility of appeal and hearing before the Board, and after receiving an adverse decision, deciding not to further appeal, cannot now assert that no action shall lie against it because the Timmons' obligation to pay was not finally determined by judgment after actual trial.

The judgment will be reversed and the case remanded to the District Court with instructions to enter judgment for Defendant-Appellant in the amount of $19,698.76, together with interest and costs.