GALLAGHER v. FIDELITY & CASUALTY CO. OF NEW YORK.

(Supreme Court, Appellate Division, Second Department.   July 31, 1914.)

1. INSURANCE (§ 451*) — ACCIDENT INSURANCE — CONSTRUCTION OF POLICY — "SUNSTROKE"—"ACCIDENT"—"ACCIDENTAL MEANS."

An accident policy, insuring against bodily injury from accidental means, provided that sunstroke, suffered through accidental means, should be deemed bodily injuries. Insured, after being exposed to the sun's rays

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

in the necessary conduct of his business, suffered a "sunstroke" which is defined as an inflammatory disease of the brain, brought on by exposure to the too intense heat of the sun's rays, or to overheated air. *Held,* that, as insured while intending to be in the sun did not intend to produce a sunstroke, the sunstroke was an "accident" which is an event that takes place without one's foresight or expectation, and hence was within the policy, being produced by "accidental means," which are agencies that produce effects that are not their natural and probable consequences; the requirement that the sunstroke be produced by accidental means not requiring an accident to precede the sunstroke.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1171, 1172; Dec. Dig. § 451.*

For other definitions, see Words and Phrases, vol. 7, p. 6790; vol. 1, pp. 62–70; vol. 8, p. 7560; vol. 1, p. 72.]

2. INSURANCE (§ 146*)—CONTRACTS—CONSTRUCTION.
    Where the terms of an insurance contract are vague, they should be construed most strongly against the insurer.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 292, 294–298; Dec. Dig. § 146.*]

Appeal from Trial Term, Kings County.

Action by John T. Gallagher against the Fidelity & Casualty Company of New York. From a judgment for plaintiff, and an order denying new trial, defendant appeals. Judgment and order affirmed.

Argued before JENKS, P. J., and BURR, RICH, STAPLETON, and PUTNAM, JJ.

Edwin A. Jones, of New York City, for appellant.
James F. Lynch, of New York City, for respondent.

BURR, J. [1] On February 1, 1910, defendant issued and delivered to plaintiff its policy of accident insurance. By the payment of annual premiums subsequently accruing, the policy was in full force on July 11, 1911. Upon that date, which was an exceedingly hot day, after being exposed to the sun's rays in the necessary conduct of his business, for an unusual number of hours, plaintiff suffered a physical experience which the jury have found, upon sufficient evidence, was a "sunstroke." The policy in question insured the person named therein "against bodily injury  *  *  *  through accidental means (excluding suicide, sane or insane, or any attempt thereat, sane or insane), and resulting directly, independently and exclusively of all other causes" in total disability, partial disability, or death. Among the "general provisions" of the policy is one to the effect that the term "bodily injury" is defined in the insuring clause, and as so defined shall be understood wherever used in the policy. Turning to the insuring clause, we find, among others:

"Article 6. Any one of the following, namely,—sunstroke, freezing, hydrophobia, asphyxiation—suffered through accidental means (excluding suicide, sane or insane, or any attempt thereat, sane or insane), shall be deemed a bodily injury within the meaning of this policy."

Appellant contends that the sunstroke experienced by plaintiff was not suffered "through accidental means," that an injury occurring as the direct result of intentional acts is not thus produced, and that as

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

plaintiff had intended to do all of the things which he did upon the day in question prior to the occasion thereof, this sunstroke, although as a result it may have been wholly unexpected, followed intentional rather than accidental means. To quote from his brief, the phrase in question "means that, the policy being an accident policy, the defendant will pay indemnity for death or disability by sunstroke only when the means or causes leading to such sunstroke are such as makes the sunstroke itself the result of preceding accidental means." If this policy had insured only against bodily injury sustained through accidental means, with no definition or qualification, there might. be greater strength in such contention. Southard v. Railway Passengers' Assurance Co., 34 Conn. 574, Fed. Cas. No. 13,182; Appel v. Ætna Life Ins. Co., 86 App. Div. 83, 83 N. Y. Supp. 238; Schmid v. Indiana Travelers' Accident Ass'n, 42 Ind. App. 483, 85 N. E. 1032; Feder v. Iowa State Traveling Men's Ass'n, 107 Iowa, 538, 78 N. W. 252, 43 L. R. A. 693, 70 Am. St. Rep. 212; Sinclair v. The Maritime Passengers' Assurance Co., 3 Ellis & Ellis, 478. But even then it might be a question for the jury, considering sunstroke as an accident rather than a disease, whether under the circumstances here disclosed such sunstroke was not occasioned by "accidental means." While plaintiff may have voluntarily exposed himself to the sun's rays, all of the evidence would justify a finding that the result of such exposure was neither natural in the sense that it was usual, or a result similar to that which followed like exposure on previous occasions, nor was it foreseen nor desired. An accident is—

"an event which takes place *without one's foresight or expectation*, and which proceeds from an unknown cause, or *an unusual effect of a known cause* not within the expectation of the person injured." Richards on Insurance Law, 3d Ed., § 385.

"Accidental means are those which produce effects which are not their natural and probable consequences." Cooley's Briefs on the Law of Insurance, 3156.

"Means" as here used is synonymous with "cause," and, appearing in a policy of insurance in connection with the adjective "accidental," is used—

"in its ordinary, popular sense, as meaning 'happening by chance; · unexpectedly taking place; not according to the usual course of things; or not as expected.' * * * If a result is such as follows from ordinary means, voluntarily employed, in a *not unusual or unexpected way*, it cannot be called a result effected by accidental means; but * * * if, as in the act which precedes the injury, *something unforeseen, unexpected, unusual, occurs which produces the injury*, then the injury has resulted through accidental means." U. S. Mut. Accident Ass'n v. Barry, 131 U. S. 100, 121, 9 Sup. Ct. 755, 762 (33 L. Ed. 60).

Technically, sunstroke is rather a disease than an accident. As was said by Cockburn, Chief Justice, sunstroke is "an inflammatory disease of the brain, brought on by exposure to the too intense heat of the sun's rays." Sinclair v. The Maritime Passengers' Assurance Co., supra. Sunstroke is a term "applied to the effects produced upon the central nervous system, and through it upon other organs of the body, by exposure to the sun or to overheated air." Encyclopedia Britannica, title Sunstroke. · The evidence in this case also warrants the

finding that this inflammatory condition of the brain may result from exposure to artificial heat, as well as from the direct rays of the sun. The antithesis of "accidental" is "intentional." It may be that plaintiff intentionally exposed himself to the sun, but that he intended thereby to produce this "inflammatory condition of the brain" is without any evidence to support it. The result was not "according to the usual course of things." It did not follow as a "usual effect of a known cause." It was not the "natural and probable consequence" thereof, any more than was the injury considered in U. S. Mut. Accident Ass'n v. Barry, supra, or in American Accident Co. v. Carson, 99 Ky. 441, 36 S. W. 169, 34 L. R. A. 301, 59 Am. St. Rep. 473, or in Button v. American Mut. Accident Ass'n, 92 Wis. 83,.65 N. W. 861, 53 Am. St. Rep. 900. In the Barry Case, decedent intended to jump from the platform on which he was walking, to the ground. He did not intend to alight with so much violence as to produce his death. In the Carson Case and in the Button Case, the insured apparently intended to engage in the acts during the performance of which he was shot and killed by a third person, but because this was a result unexpected by him, it was held that death was occasioned by "accidental means."

In the policy now under consideration, however, in its defining clause, sunstroke is included within the definition of "bodily injury," and because this is an accident as distinguished from a life policy, it might be urged with considerable force that every sunstroke is within the meaning of the policy an accidental bodily injury. While it may be conceded that sunstroke, freezing, and hydrophobia are diseases rather than accidents, the popular idea is not so, and as a concession to this view, to save all question as to liability therefor, these, together with asphyxiation, are specifically named as conditions as to which the policy holds good. Herdic v. Maryland Casualty Co. (C. C.) 146 Fed. 396, affirmed 149 Fed. 198, 79 C. C. A. 156.

"Accident insurance companies do business mostly with the common people, and the term 'accident' as used in these policies should be construed most strongly against the companies, and be defined according to the ordinary and usual understanding of its signification." Young v. Railway Mail Ass'n, 126 Mo. App. 325, 103 S. W. 557.

[2] The exact language of the clause in question is above quoted. The language taken in its entirety is inapt. If both of the qualifying clauses relate not only to asphyxiation, which they immediately follow, but to sunstroke, freezing, and hydrophobia as well, it is not easy to contemplate hydrophobia as being a method adopted by a would-be suicide. One might, it is true, expose himself to a dog bite, but that is not the language of the policy, and if he did so, it by no means follows that hydrophobia would result therefrom. The punctuation would limit the qualifying clause, "suffered through accidental means" to asphyxiation only, and so limited we can conceive of a person suffering asphyxiation intentionally or accidentally. We can think also of a person exposing himself to great heat or to extreme cold, but that he deliberately intended thereby in the one case to bring about the disease known as sunstroke, and in the other case the physical condition known as freezing, it is not easy to conclude. If there must be

a "preceding accident," and in consequence thereof subsequent exposure to the sun's rays or excessive heat, followed by the disease known as sunstroke, to come within the terms of this policy, then the clause in question would add little or nothing to the previous binding force of the policy, for the reason that the indemnity would be not for the sunstroke independently considered, but for the accident which preceded it, and for everything resulting therefrom, including such sunstroke. If the language is vague and indefinite, it must be construed most strongly against the insurer. Schumacher v. Great Eastern C. & I. Co., 197 N. Y. 58, 90 N. E. 353, 27 L. R. A. (N. S.) 480; Paul v. Travelers' Ins. Co., 112 N. Y. 472, 20 N. E. 347, 3 L. R. A. 443, 8 Am. St. Rep. 758.

We think, therefore, that upon the evidence in this case the learned trial court would have been justified in leaving to the jury as the only question of fact in the case the question whether plaintiff did suffer a sunstroke. The fact that it was also left to the jury to say whether he suffered a sunstroke "within the meaning of this article 6 of the policy," which had just been read in their hearing, in view of their verdict, presents no ground of error. In this view of the case the exceptions taken to the charge require no consideration.

The judgment and order should be affirmed, with costs. All concur.