## MUTUAL LIFE INS. CO. OF NEW YORK v. DODGE.*

(Circuit Court of Appeals, Fourth Circuit. February 27, 1926.)

No. 2383.

1. Insurance ⟨⟩⟩529—Insured's death, caused by local administration of novocaine preliminary to operation, because of hypersusceptibility to such drug, held death by "accidental means," within double indemnity policy clause.

Death of insured, resulting from local administration of novocaine preliminary to operation, because of insured's hypersusceptibility to such drug, *held* death by "accidental means," within double indemnity clause in accident policy for death resulting from bodily injury directly or indirectly.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Accident—Accidental; Accidental Means.]

2. Insurance ⟨⟩⟩455.

"Accidental" is happening by chance or unexpectedly.

3. Insurance ⟨⟩⟩455—Effect which cannot reasonably be anticipated from use of means which produced it is produced by "accidental means."

An effect which is not the natural and probable consequence of means which produced it, and which would not ordinarily follow and could

*Certiorari denied 46 S. Ct. 629, 70 L. Ed. ——.

not reasonably be anticipated, is produced by accidental means.

**4. Insurance ⚖➡529—Idiosyncrasy of insured, resulting in death from local application of novocaine, held not bodily infirmity, so as to preclude recovery under double indemnity clause as for accidental death.**

Insured's hypersusceptibility to novocaine, as explained by experts, resulting in his death from local administration preliminary to operation, *held* not such bodily infirmity as to preclude recovery under double indemnity clause as for accidental death.

**5. Insurance ⚖➡529—As respects double indemnity provision for accidental death, "bodily infirmity" or "disease" are practically synonymous, referring only to ailment or disease of settled character.**

As respects double indemnity provision for accidental death, words "bodily infirmity" or "disease" are practically synonymous, and refer only to ailment or disease of settled character.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Bodily Infirmity; Disease.]

**6. Insurance ⚖➡529—Local administration of novocaine held sole cause of insured's death, and his hypersusceptibility to drug was mere condition, not contributing cause as respects liability under clause providing double indemnity for death by accident.**

Where insured's death resulted from local administration of novocaine preliminary to operation, because of idiosyncrasy or hypersusceptibility to drug, *held*, that administration of anæsthetic was sole cause of death, and idiosyncrasy of insured was mere condition, not contributing cause as respects liability under clause providing double indemnity for death by accident.

In Error to the District Court of the United States for the District of Maryland, at Baltimore; Morris A. Soper, Judge.

Action by Winnie G. Dodge against the Mutual Life Insurance Company of New York. Judgment for plaintiff, and defendant brings error. Affirmed.

Forrest Bramble and Randolph Barton, Jr., both of Baltimore, Md. (Frederick L. Allen, of New York City, on the brief), for plaintiff in error.

Emory H. Niles and Alfred S. Niles, both of Baltimore, Md. (Niles, Wolff, Barton & Morrow, of Baltimore, Md., on the brief), for defendant in error.

Before WADDILL, ROSE, and PARKER, Circuit Judges.

PARKER, Circuit Judge. This was an action instituted by Winnie G. Dodge, as beneficiary under a policy of insurance issued by the Mutual Life Insurance Company of New York on the life of her deceased husband, Dr. Geo. F. Dodge. The policy sued on was for the sum of $10,000, with double indemnity in case of accidental death. The company paid the $10,000, but contested its liability under the double indemnity provision. There was a judgment in favor of plaintiff, and defendant brings this writ of error.

The double indemnity provision, which is the only part of the policy which need be considered, provides for the payment of double the amount of the face of the policy, if death results "directly from bodily injury, * * * independently and exclusively of all other causes," and if such bodily injury be effected "solely through external, violent, and accidental means: * * * Provided, however, that this double indemnity shall not be payable * * * if such death result * * * directly or indirectly from bodily or mental infirmity or disease of any sort."

Insured's death resulted from paralysis of the respiratory center, caused by the local administration of a drug known as novocaine preliminary to an operation for the removal of tonsils. The evidence is that insured was in good health and had no bodily infirmity or disease, except the diseased condition of the tonsils, which admittedly did not contribute to his death. Insured, who was a physician himself, had observed the operating physician use novocaine in operations performed on other patients. He knew that it was to be used as a local anæsthetic in his case, and it was applied in the usual manner. It is admitted that ordinarily novocaine is absolutely harmless, and the evidence is that it proved fatal to insured because, unknown to himself and the operating physician, he had an "idiosyncrasy" or "hypersusceptibility" to the drug. The uncontradicted testimony of the experts is that this "idiosyncrasy" or "hypersusceptibility" is not an infirmity or disease, but merely a peculiarity of the individual, which is not discoverable by any test or examination, and which is found only in instances so exceedingly rare that it is not taken into account as a danger in administering the drug.

The court denied a motion for a directed verdict by defendant and gave the jury the following instruction, to which defendant excepted, viz.:

"If the jury shall find that there was injected into the deceased a quantity of the drug novocaine for the purpose of inducing anæsthesia, and that the natural and probable effect of novocaine administered in the manner and in the quantity used in this case is to induce local anæsthesia without injury to the patient, and if they shall further find that by reason of a bodily idiosyncrasy of the insured whereby he was unusually susceptible to said

drug, which susceptibility was unforeseen and unexpected, and the action of the drug was to cause death, then their verdict shall be for the plaintiff."

The points presented by the other exceptions are the same as those addressed to the refusal to direct a verdict and the giving of the instruction above quoted. They are: (1) That the death of insured was not due to accidental means; (2) that the idiosyncrasy of insured was a bodily infirmity within the meaning of the double indemnity clause; and (3) that the idosyncrasy was at least a contributing cause of death, and hence the administration of the anæsthetic was not the sole means even if accidental.

[1-3] We think that the learned District Judge was correct in overruling the defendant's motion and in giving to the jury the instruction quoted above. We have given careful consideration to the points relied upon by defendant in the light of the very able brief filed in its behalf, but in our opinion none of the points can be sustained. We think that not only was the death of insured an "accidental death," but that it was also a death caused by "accidental means," within the meaning of the double indemnity clause.

"Accidental" is defined in Webster's Dictionary as "happening by chance, or unexpectedly; taking place not according to the usual course of things; casual; fortuitous; as an accidental visit." And in defining the term "accidental means" Corpus Juris says: "Where the effect is not the natural and probable consequence of the means which produce it—an effect which does not ordinarily follow and cannot be reasonably anticipated from the use of the means, or an effect which the actor did not intend to produce and which he cannot be charged with a design of producing —it is produced by accidental means." 1 C. J. 427.

Cooley's Briefs on Insurance, at page 3156, gives practically the same definition. Judge Sanborn, speaking for the Circuit Court of Appeals of the Eighth Circuit, says: "An effect which is the natural and probable consequence of an act or course of action is not an accident, nor is it produced by accidental means. It is either the result of actual design, or it falls under the maxim that every man must be held to intend the natural and probable consequence of his deeds. On the other hand, an effect which is not the natural or probable consequence of the means which produced it, an effect which does not ordinarily follow and cannot be reasonably anticipated from the use of those means, an effect which the actor did not intend to pro-

duce and which he cannot be charged with the design of producing, * * * is produced by accidental means. It is produced by means which were neither designed nor calculated to cause it. Such an effect is not the result of design, cannot be reasonably anticipated, is unexpected, and is produced by an unusual combination of fortuitous circumstances; in other words, it is produced by accidental means." Western Com. Travelers' Ass'n v. Smith, 85 F. 401, 29 C. C. A. 223, 40 L. R. A. 653, approved in Ætna Ins. Co. v. Brand (C. C. A. 2d) 265 F. 6.

Mr. Justice Blatchford, speaking for the Supreme Court of the United States, says: "If a result is such as follows from ordinary means, voluntarily employed, in a not unusual or unexpected way, it cannot be called a result effected by accidental means; but if, in the act which precedes the injury, something unforeseen, unexpected, unusual occurs, which produces the injury, then the injury has resulted through accidental means." Mutual Accident Ass'n v. Barry, 9 S. Ct. 755, 131 U. S. 100, 33 L. Ed. 60.

Applying these definitions to the facts of the case, it becomes readily apparent that the death of insured was caused by accidental means. To paraphrase the language of Judge Sanborn, it was not the natural and probable consequence of the administration of the novocaine. Death does not ordinarily follow, and cannot reasonably be anticipated, from the use of the drug. Death was produced in the case of insured by means which were neither designed nor calculated to cause it. It was not the result of design, could not have been anticipated, and was produced by an unusual combination of fortuitous circumstances. In the act which preceded the death of insured there was "something unforeseen, unexpected, and unusual," to use the language of Mr. Justice Blatchford, viz. the application of the novocaine to one who had an "idiosyncrasy" or "hypersusceptibility" to the drug. It is true that the doctor intended to apply the drug and insured intended that he should apply it; but neither intended to apply it to a body possessed of the idiosyncrasy. Death resulted because of their applying the drug in ignorance of this peculiarity in the object acted upon, and was a result not calculated nor intended, and one which could not reasonably have been foreseen. We deem it unnecessary to go into an extended review of the cases cited to us, the point in none of which is exactly similar to that of the case at bar. Our conclusion is supported by the principles applied in the well-reasoned cases hereinbefore mentioned of Ætna Life Ins.

Co. v. Brand (C. C. A. 2d) 265 F. 6, Western Com. Trav. Ass'n v. Smith (C. C. A. 8th) 85 F. 401, 29 C. C. A. 223, 40 L. R. A. 653, and U. S. Mut. Accident Association v. Barry, 9 S. Ct. 755, 131 U. S. 100, 33 L. Ed. 60.

[4, 5] This brings us to the second question in the case: Was the idiosyncrasy of insured a bodily infirmity? We think not. The uncontradicted testimony of the experts examined in the case was that it was not an infirmity, but a peculiarity. If there were any question about the matter, it would seem to be a question of fact; and with the evidence all one way it was within the province of the court to instruct the jury as to their finding with regard thereto. But, apart from this, we think that the court would have been justified in holding, as a matter of law, that the idiosyncrasy of insured as explained by the experts was not a bodily infirmity within the meaning of the double indemnity clause. The words "bodily infirmity or disease" are frequently used in policies of insurance and have a well understood meaning. They are construed to be practically synonymous, and to refer only to an ailment or disease of a settled character. 1 C. J. 452; Cooley's Briefs on Law of Insurance, vol. 4, p. 3198; Meyer v. Fidelity, etc., Co., 65 N. W. 328, 96 Iowa, 378, 59 Am. St. Rep. 374; Mfrs. Accident Indemnity Co. v. Dorgan (C. C. A. 6th) 58 F. 945, 7 C. C. A. 581, 22 L. R. A. 620. It is true that in the cases in which these words have been defined the point involved has usually been whether they would cover a temporary ailment as distinguished from one of a permanent nature; but the definitions given them negative the idea that they could possibly include a personal peculiarity, not in any wise impairing bodily health or strength, and not in any way interfering with the functioning of the organs of the body. As said by the Circuit Court of Appeals of the Third Circuit: "An infirmity of the body, as the term implies, is something that materially impairs the bodily powers." Black v. Travelers' Ins. Co., 121 F. 732, 58 C. C. A. 14, 61 L. R. A. 500.

[6] The only remaining question is whether the administration of the anæsthetic was the sole cause of the death of insured. The defendant says not, taking the position that the idiosyncrasy of the insured was a contributing cause of his death, even if it be not viewed as a bodily infirmity. The fault of this position lies in ascribing substantive reality to the idiosyncrasy, which is merely a term used to describe the behavior of the body when brought in contact with the drug. As explained by the experts, to say that insured had an idiosyncrasy for novocaine was merely to say that he was peculiarly sensitive to its effects. The cause of death was not this sensitiveness; it was the administration of the novocaine. If a man with an abnormally thin skull be struck a blow which would not seriously injure a normal man, but which causes his death, it is perfectly plain that the cause of death is not the thinness of the skull, but the receipt of the blow. The cases are analogous. The idiosyncrasy was but the "condition"; the administration of the novocaine was "the moving, sole, and proximate cause," of the death. Mfrs. Accident Indemnity Co. v. Dorgan, (C. C. A. 6th) 58 F. 945, 7 C. C. A. 581, 22 L. R. A. 620; Winspear v. Accident Ins. Co., 6 Q. B. D. 42; Lawrence v. Accidental Ins. Co., 7 Q. B. D. 216; Meyer v. Fidelity & Casualty Co., 65 N. W. 328, 96 Iowa, 378, 59 Am. St. Rep. 374; New Amsterdam Casualty Co. v. Shields (C. C. A. 6th) 155 F. 54, 85 C. C. A. 122; Fairclough v. Fidelity & Casualty Co., 297 F. 681, 54 App. D. C. 286.

We find no error in the trial below, and the judgment of the District Court is accordingly affirmed.

Affirmed.