Charles M. Mulholland, as Administrator, etc., of Lydia T. Mulholland, Deceased, Plaintiff, *v.* Prudential Insurance Company of America, Defendant.

City Court of New York, Bronx County, May 28, 1935.

*Patrick J. McMahon* [*Andrew Byrne* of counsel], for the plaintiff.

*Solon Weit* [*B. P. Goldman* of counsel], for the defendant.

Donnelly, J. The action appeared in its regular order on the non-jury calendar of this court and was tried before me without a jury.

The action was brought to recover double indemnity for accidental death benefits under a policy issued by the defendant on the life of Leo T. Mulholland. The pertinent provisions of the policy, with respect to accidental death benefits, are: " The monthly installments of the accidental death benefits specified * * * shall be payable * * * upon receipt of due proof that death of the insured occurred * * * as a result, directly and independently of all other causes, of bodily injuries, effected solely through external, violent and accidental means * * * provided, however, that no accidental death benefit shall be payable

if the death of the insured resulted  *  *  *  directly or indirectly from bodily or mental infirmity or disease in any form."

About five o'clock in the afternoon of August 13, 1929, the insured, while washing a coal and ice truck on which he was employed, walked backwards off the truck, landed on his feet, and struck his right elbow on the body of the truck. He felt pain in the elbow. He was then twenty-four or twenty-five years of age; unmarried; about five feet, eleven inches in height, and weighed about one hundred and seventy pounds. At about five-thirty the same afternoon, he and other employees, after quitting work, engaged in the game of "shooting dice" which continued until shortly after eight o'clock in the evening of the same day. That same evening Mulholland went to see a Dr. Martin, who examined him and found a dislocation of the right elbow. At the time of this examination Dr. Martin also found that Mulholland had a regurgitation of the heart, heart murmer, and a slight enlargement of the heart. Dr. Martin attempted to reduce the dislocation of the elbow, first without an anesthetic and then with an anesthetic. This reduction did not involve any use of the knife or the creation of an open wound. In administering the anesthesia, Dr. Martin took into consideration the heart condition of the insured and used an anesthetic, suitable, in his opinion, to the heart condition. The dislocation was properly reduced, but the insured did not react from the anesthetic. He died under the anesthesia. Dr. Martin's diagnosis was that the insured died from cardiac failure, possibly superinduced by the administration of the anesthesia. After the insured failed to react, Dr. Martin saw that the face of the insured had a slight bluish tinge, which, to him, was a further indication of cardiac failure.

Lydia T. Mulholland, the beneficiary named in the policy, presented a claim to defendant for death benefits under the policy. In support of this claim, and as a proof of the fact of death, there accompanied the claim papers a copy of the death transcript of the health department of the city of New York, whereon was recited the cause of death as cardiac failure during surgical anesthesia. Surgical anesthesia does not connote the use of the knife or an open wound.

Upon these facts there was no proof that the death of the insured was caused by accidental means within the meaning of the policy. (*Barnstead* v. *Commercial Travelers' Mut. Acc. Assn.*, 204 App. Div. 473; *Pope* v. *Prudential Ins. Co.*, 29 F. [2d] 185; *McMartin* v. *Fidelity & Casualty Co.*, 264 N. Y. 222, 223; *Allendorf* v. *Fidelity & Casualty Co.*, 250 id. 529; *Silverstein* v. *Met. Life Ins. Co.*, 254 id. 81; *Reynell* v. *Indemnity Ins. Co.*, 258 id. 572.)

In *Barnstead* v. *Commercial Travelers' Mut. Acc. Assn.* (*supra*) an autopsy upon the body of the insured revealed that there was a condition stated by one of the experts for plaintiff to be a congenital state or condition, of unknown cause, characterized by an abnormal persistence of a gland in the chest which is known as the thymus gland. The experts differed as to whether this was a disease; but whether a disease or an abnormal condition, it was agreed that a person, the subject of it, was liable to sudden death from slight causes. The insured went to a dentist to have a tooth extracted. After the dentist administered a slight quantity of laughing gas, the deceased stopped breathing and died. The court said (at p. 474): "In this case the death was not occasioned by any impurity or other defect in the gas or any negligence or lack of skill in its administration to the insured, nor was it inhaled accidentally but was intentionally administered at the request of the insured and voluntarily inhaled by him. The insured did what he fully intended to do, and it was done precisely as intended. There was nothing accidental in the means, but only in the result which was occasioned by the condition of the insured," citing cases.

In the *Allendorf Case* (*supra*) the insured wrenched and strained himself while lifting and moving ash cans, thereby causing a dilation of the heart, and death ensued. It was there held that the accident, if it may be so called, was not the exclusive cause of death, and judgment in favor of defendant entered upon dismissal of the complaint by the court at Trial Term was affirmed. The distinction between a morbid or abnormal condition of such quality or degree as to be fairly described as a disease or an infirmity, and a condition abnormal or unsound, yet so remote in its potential mischief that common speech would call it not a disease or an infirmity but at most a predisposing tendency, is illustrated by a number of examples in the *Silverstein Case* (*supra*) to instance those occasions in which recovery was allowed for death due to accidental means. But in that case the court said (at p. 85): "There will be no recovery under a policy so written, where an every day act, involving ordinary exertion, brings death to an insured because he is a sufferer from heart disease." citing *Allendorf* v. *Fidelity & Casualty Co.* (*supra*).

The only remaining question is, did defendant waive receipt by it of due proof that the death of the insured was caused by accidental means, as defined by the policy? Plaintiff asserts that defendant did so waive, and he bases this contention upon a let er written by defendant, which reads: "The accidental clause in the policy provides that the amount of accidental death benefit specified

will be paid if death result, directly and independently of all other causes, from bodily injuries, effected solely through external, violent and accidental means, that such death must occur within sixty days of the accident, and that no accidental death benefit will be paid if death result directly or indirectly from bodily or mental infirmity or disease in any form.

" The insured fell from a wagon August 13, 1929, and dislocated his shoulder. This is not considered a serious or a fatal injury. His employer obtained a doctor and it appears that an anesthetic was administered while the shoulder was being set, from the effects of which he died. His death did not result from the fall but was caused by the anesthetic which he voluntarily took on the advice of his doctor, and, therefore, the means or cause of death was not accidental."

Before the trial of this action affirmative proof of the cause of death as cardiac failure was submitted to defendant on behalf of the beneficiary named in the policy. Neither in that proof nor in the evidence adduced at the trial did plaintiff show that the death of the insured occurred as the result, directly and independently of all other causes, of bodily injuries effected solely through accidental means. It is true that defendant's letter contains statements which may be taken as a denial of its liability for double indemnity. But there is nothing in the language of the letter indicative of defendant's intention to close the door to the submission by plaintiff of satisfactory proof of death by purely accidental means. As a matter of fact, the opening paragraph of defendant's letter refers to a previous communication from the former attorney for the beneficiary named in the policy, the defendant's answer thereto, and a statement showing that defendant had been waiting for a period of four months for a reply. This does not sound like an unqualified refusal by defendant of any further correspondence upon the subject. Defendant was not called upon to say that, if plaintiff contradicted the proof previously submitted, liability might exist. (*Wachtel* v. *Equitable Life Assur. Society*, 266 N. Y. 345.) It may be that it would have been a meaningless gesture to continue the negotiations. But this futility cannot be charged to defendant. Plaintiff had not the necessary proofs and knew he could not furnish them.

Defendant's motion to dismiss complaint is granted. Exception to plaintiff. Ten days' stay and thirty days to make and serve case.