HENNI MANSBACHER, Appellant, v. THE PRUDENTIAL INSURANCE COMPANY OF AMERICA, Respondent.*

First Department, May 1, 1936.

*Revg. 154 Misc. 796.

*Joseph L. Hochman* of counsel [*Emanuel Morganlander*, attorney], for the appellant.

*Abraham Gruber* of counsel [*Joseph G. Telchin* with him on the brief; *Solon Weit*, attorney], for the respondent.

*J. Alvin Van Bergh* of counsel [*Alfred Appel* with him on the brief; *Proskauer, Rose & Paskus*, attorneys], for other policyholders *amicus curiæ*.

O'MALLEY, J.    The question presented is whether plaintiff produced sufficient evidence to justify the finding of the trial justice that her husband met his death under such circumstances as entitled plaintiff, as beneficiary, under a policy of life insurance on her husband's life, to recover an accidental death benefit.

For some two years prior to his death on January 3, 1934, plaintiff's husband had been treated for diabetes.    In December, 1933, on complaint of restlessness and inability to sleep, his physician prescribed veronal to be taken twice daily in one and one-half grain tablets.

Plaintiff and her husband after a visit to friends the preceding evening, arose on December 31, 1933, at about eleven A. M.    The husband complained of earache, and at the suggestion of the plaintiff search was made in their own apartment for aspirin.    Finding none, they attempted to secure some from a neighbor, but were unsuccessful.    The plaintiff then suggested that her husband take some veronal.

About an hour and a half later plaintiff was called by her husband who told her that he had taken the veronal and that it was making him feel sick. Upon investigation the plaintiff found her husband in an apparent state of coma. His personal physician was called and after emergency treatment her husband was taken to a hospital where he died three days later without regaining consciousness.

There can be no dispute that the cause of death was veronal poisoning. The ambulance surgeon who was called found two empty veronal bottles in the room. Originally each contained ten five-grain tablets or a total of 100 grains. However, we are satisfied that, as the trial justice and the Appellate Term have found, the deceased did not meet his death as a result of suicide.

The Appellate Term in reversing held, however, that under the terms of the policy the accidental death benefits did not accrue; that as the veronal had been intentionally and not accidentally taken, there was failure of proof of death through accidental means. To entitle plaintiff to recover we will assume that it was incumbent upon her to prove that the death resulted from accidental means. The policy provided that the accidental death benefit was payable upon proof of death occurring as a result " of bodily injuries effected solely through external, violent and *accidental means.*" (Italics ours.) Death was caused at least through external, violent means. (*Paul* v. *Travelers' Ins. Co.*, 112 N. Y. 472.)

True it is there are cases in this jurisdiction which hold that where unanticipated death occurs by means which were intended, it cannot be said to have been the result of " accidental means." (*Appel* v. *Ætna Life Ins. Co.*, 86 App. Div. 83; affd., 180 N. Y. 514; *Barnstead* v. *Commercial Travelers' Mutual Accident Assn.*, 204 App. Div. 473; *Gould* v. *Travelers Insurance Co.*, 244 id. 274; affd., 270 N. Y. 584; *Pixley* v. *Commercial Travelers Mutual Accident Assn.*, 165 App. Div. 950; affd., 221 N. Y. 545.) It is upon these and similar authorities that respondent relies. However, they seem to us factually distinguishable. In each but the last cited there was some internal, as distinguished from external, means which resulted in death. In *Appel* v. *Ætna Life Ins. Co.* (*supra*) death resulted from appendicitis. The riding of a bicycle caused certain muscles to be used which irritated an abnormal appendix and its surrounding walls. It broke because of its weakened condition.

In *Barnstead* v. *Commercial Travelers' Mutual Accident Assn.* (*supra*) death was occasioned by an anæsthetic administered by a dentist to one having an internal condition known as status lymphaticus, a congenital state which rendered the subject liable

to sudden death from slight causes, and more particularly the giving of a general anæsthetic.

In *Gould* v. *Travelers Insurance Co.* (*supra*) the cause of death was internal trouble which might have been excited by physical massage. While in the case before us the deceased intended to take veronal, the finding that it was not taken with suicidal intent leads to the conclusion that there was no intentional taking of a lethal dose. Nor is there any evidence tending to show that any internal condition of the insured was a contributory cause of death.

Particularly, the defendant relies upon *Pixley* v. *Commercial Travelers Mutual Accident Assn.* (*supra*). As stated in *Fane* v. *National Association of Railway Postal Clerks* (197 App. Div. 145), the trial justice in the *Pixley* case dismissed the complaint on the ground that the taking of an overdose of morphine was not an accidental means as required by the policy.

It is to be noted that neither the Appellate Division nor the Court of Appeals wrote in the *Pixley* case and the affirmance may not be said necessarily to have been predicated upon the reason assigned by the learned trial justice.

An examination of the record on appeal in the Court of Appeals discloses that the policy sued upon expressly provided that the insurance company was not to be liable for indemnity for " injuries or death resulting from or caused by gas or poison taken voluntarily, involuntarily, or accidentally."

It is thus apparent that, even had the trial justice regarded the death as having resulted through accidental means — contrary to his expressed reason for the dismissal of the complaint — such disposition would have been proper. Death, through accidental means, would not have entitled the plaintiff to recover where the accidental means was the taking of poison voluntarily, involuntarily or accidentally.

In construing the policy, its words should be judged in the light of the understanding of the average man (*Lewis* v. *Ocean Acc. & G. Corp.*, 224 N. Y. 18, 21), and any ambiguities and uncertainties resolved against the company which drew the policy. (*Mutual Life Ins. Co.* v. *Hurni Packing Co.*, 263 U. S. 167, 174; *Stipcich* v. *Metropolitan Life Ins. Co.*, 277 id. 311.)

This case, therefore, does not seem to fall within the principle of the authorities relied upon by the defendant but rather within the category of such cases as *Gallagher* v. *Fidelity & Casualty Co.* (163 App. Div. 556; affd., 221 N. Y. 664) and *Lewis* v. *Ocean Acc. & G. Corp.* (*supra*).

In the first case cited the insured had died from sunstroke and though the insured had intentionally exposed himself to the sun, it was held that his death had occurred through accidental means. In the second the deceased died from inflammation of the brain which resulted through infection occurring when the deceased had punctured a pimple with a contaminated instrument.

In both of those cases the insured had intended the act which resulted in death, but an unusual and unexpected result followed. Nevertheless, it was held that death occurred through accidental means.

It follows, therefore, that the determination of the Appellate Term should be reversed and the judgment of the City Court reinstated, with costs in this court and in the Appellate Term to the plaintiff.

MARTIN, P. J., McAVOY, TOWNLEY and GLENNON, JJ., concur.

Determination of the Appellate Term unanimously reversed and the judgment of the City Court reinstated, with costs in this court and in the Appellate Term to the plaintiff.