MINNIE MEYER, Appellant, *v.* NEW YORK LIFE INSURANCE COM-
PANY, Respondent.

Second Department, December 15, 1936.

*Victor Whitehorn,* for the appellant.

*Kenneth deF. Carpenter,* for the respondent.

DAVIS, J. On July 3, 1924, the defendant issued a policy of life insurance to Richard G. Meyer for $10,000, the amount being payable to his wife, Minnie Meyer, at the death of the insured. It was a double-indemnity policy, providing for an additional payment of $10,000 " upon receipt of due proof that the death

of the Insured resulted directly and independently of all other causes from bodily injury effected solely through external, violent and accidental cause." There were certain reservations concerning the payment of this additional sum, such as self-destruction; but these are of no importance here, as there is no conflict in the proof.

Richard G. Meyer died March 11, 1935. The defendant paid the principal sum of $10,000, but disclaimed liability on the double-indemnity provisions of the policy. The beneficiary brought this action to recover the additional sum, claiming that the insured suffered an accidental death within the language of the policy. On the trial the complaint was dismissed at the close of the plaintiff's case.

There is presented here only a question of law as to whether the proof made a *prima facie* case of death by accidental cause. Whatever defenses there may be, they have not been heard.

The principal facts may be briefly stated. In the early part of 1934 the insured began to suffer from insomnia, although otherwise he was in good health. In June of that year his family physician prescribed from one to three capsules of sodium ortal to induce sleep. These capsules were obtained at a drug store. This sedative was taken more or less regularly from the time it was prescribed until the death of the insured.

During the evening of March 10, 1935, Mr. Meyer purchased a small bottle of these sodium ortal capsules. The following morning he was found in bed, unconscious, by the members of his family. A physician was summoned at once; and when emergency treatment did not result favorably, the insured was taken to a hospital. He died about noon. An autopsy was performed; and it is undisputed that death was the result of an overdose of sodium ortal. There is here no claim of intended self-destruction. The home life of Mr. Meyer was happy; there were three children doing well in school; he was in good health, and had no business trouble. Obviously, the insured intended to take the capsules. Either he misjudged their effect or there was a mistake in the preparation of the content thereof.

Therefore, the sole question is: Did the death of the insured result directly from accidental cause within the provisions of the policy? Of course, the act of taking the capsules was voluntary, but, as the proof stands, it produced an unusual and unexpected result. The remedy did not have its usual effect. For some reason, instead of being harmless, the consequences were fatal. Do these facts constitute an accident or an accidental cause of death?

It becomes necessary to consider the legal significance of the words " accident," " accidental cause," " external," and " violent."

These are all relative terms, and their meaning often depends on the particular facts presented in litigated cases. The courts of different jurisdictions reach varying conclusions in respect to facts similar to those above stated in relation to the liability of an insurer. We are principally concerned with the doctrine in this State, without analysis of the reasoning which leads to one conclusion or another.

Generally, the actions brought on accident insurance and double-indemnity claims, in which the language of the policies is often practically identical, may be roughly classified as follows: (1) Where there is obviously external violence resulting in injury or death such as a blow or fall, or the like. In such cases liability is ordinarily beyond question. (2) Where there has been external violence, but it is claimed that it was self-inflicted or suicidal. These cases ordinarily present a question of fact. (3) Where the external violence may have activated or exacerbated a pre-existing ailment or disease. As to whether it did or not is usually a question of fact depending largely upon the opinion of medical experts. If it did activate the disease, there can be no recovery. (4) Where injury or death occurred by the taking of a potion supposed to be harmless but which was a poison. (5) Where there was some intentional act of the insured producing an unusual and unexpected result.

We are here primarily concerned with those designated numbers 4 and 5. As already stated, there is a difference of opinion by text writers and in adjudicated cases concerning liability where an unforeseen result follows a voluntary act. The argument of defendant is summarized in quotations from certain text books on insurance where emphasis is given to the term " accidental means " as distinguished from " accidental result " or " accidental injuries," according to variances in provisions of policies. In brief, there is authority that death from accidental means does not imply liability where the acts which led up to the death were designed and expected, though the resulting injury may have been wholly undesigned and unexpected. (Vance, Insurance [2d ed.], p. 871; Richards, Law of Insurance [4th ed.], p. 697.)

We are dealing here with a practical question, not one of metaphysics. The term used in this policy was " accidental cause." One definition by lexicographers of " accident " is: "Anything that happens without foresight or expectation; an unusual event, which proceeds from some unknown cause, or is an unusual effect of a known cause; * * * the unforeseen course of events." The definition of " accidental " is: " Happening by chance, undesignedly, or unexpectedly; produced by accident; fortuitous." (Oxford

Dict.) So it may be said that " accidental cause " may have its foundation in something that is an unusual effect of a known cause, something undesigned and unexpected — as well as in more familiar origins leading to a fortuitous result.

The courts of this State on various occasions have discussed or defined the elements of an accident. In *Lewis* v. *Ocean Acc. & G. Corp.* (224 N. Y. 18, 20, 21) it was said: " To the scientist who traces the origin of disease, there may seem to be no accident in all this. ' Probably it is true to say that in the strictest sense and dealing with the region of physical nature, there is no such thing as an accident ' [citing English case]. But our point of view in fixing the meaning of this contract, must not be that of the scientist. It must be that of the average man [citing cases]. Such a man would say that the dire result, so tragically out of proportion to its trivial cause, was something unforeseen, unexpected, extraordinary, an unlooked-for mishap, and so an accident. This test — the one that is applied in the common speech of men — is also the test to be applied by courts."

We quote from the opinion in *Matter of Woodruff* v. *Howes Construction Co.* (228 N. Y. 276, 278): "An accidental event takes place without one's foresight or expectation; an event that proceeds from an unknown cause, or is an unusual effect of the known cause, and therefore not expected."

In considering " accidental injury " in *Matter of Connelly* v. *Hunt Furniture Co.* (240 N. Y. 83, 85), it was said: " We attempt no scientifically exact discrimination between accident and disease or between disease and injury. None perhaps is possible, for the two concepts are not always exclusive, the one of the other, but often overlap. The tests to be applied are those of common understanding as revealed in common speech."

In *Hodgson* v. *Preferred Accident Insurance Co.* (100 Misc. 155, 162) there is a quotation from 4 Cooley, Briefs on the Law of Insurance (p. 3156), as follows: " Strictly speaking, a means is accidental perhaps only when disassociated from any human agency, but this narrow interpretation is not recognized in the law of accident insurance." (See, also, *Western Commercial Travelers' Assn.* v. *Smith*, 85 Fed. 401, 405.)

So we may say that in this State the definitions of " accident " and " accidental " are not strictly limited to the sudden application of some external and violent force, but include something that happens which causes injury or death, where the original act was a voluntary one leading not to the natural and probable consequences, but to an unforeseen result. This in the common speech of men is deemed an accident, and the cause accidental.

Likewise, the words "external" and "violent" are not so limited in legal effect that the insurer may escape liability by strict definition of the terms. It is not always necessary that these words shall be interpreted as related to a blow or fall; but they are given a wider sweep as elements of causation where bodily injuries follow. (*Paul* v. *Travelers' Ins. Co.*, 112 N. Y. 472, 478, 479.) In the ordinary understanding of men, the unexpected result in this case of taking a sedative would be an accident caused by some violent reaction of the drug taken, exercising a force external to its natural effects; and with death resulting from an accidental cause.

In this State, as well as in some other jurisdictions, a liberal view is taken in respect to policies written in the language of the insurer, where a voluntary act produces an unusual, unforeseen and unexpected result in causing injury or death. It will suffice to state the legal principle without going into the details of the accident in each case. It is sufficient to say that the voluntary character of the act undertaken did not exclude either accidental means or accidental results in fixing liability based on accidental cause in the case of injury or fatality not designed or expected — where there was, in other words, an accident. (*Bailey* v. *Interstate Casualty Co.*, 8 App. Div. 127; affd., 158 N. Y. 723; *Mansbacher* v. *Prudential Ins. Co.*, 247 App. Div. 378. See, also, *Townsend* v. *Commercial Travelers Mut. Acc. Assn.*, 231 N. Y. 148; *Schwartz* v. *Commercial Travelers Mut. Acc. Assn.*, 132 Misc. 200; affd., 227 App. Div. 711; 254 N. Y. 523; *Gallagher* v. *Fidelity & Casualty Co.*, 163 App. Div. 556; affd., 221 N. Y. 664; *McQueen* v. *Prudential Ins. Co.*, 143 Misc. 682; *United States Mut. Acc. Assn.* v. *Barry*, 131 U. S. 100; *Mut. Accident Assn. of the Northwest* v. *Tuggle*, 39 Ill. App. 509; *Dezell* v. *Fidelity & Casualty Co.*, 176 Mo. 253; 75 S. W. 1102. Cf. *Caldwell* v. *Travelers Ins. Co.*, 305 Mo. 619; 267 S. W. 907.)

By reasoning and upon authority, we reach the conclusion that the plaintiff made sufficient proof of the death of the insured as resulting directly and independently of all other causes from bodily injury solely through external, violent and accidental cause, so that she was entitled to present the question of fact to the jury. Therefore, it was error to dismiss the complaint.

The judgment should be reversed on the law and a new trial granted, with costs to appellant to abide the event.

LAZANSKY, P. J., CARSWELL, JOHNSTON and ADEL, JJ., concur.

Judgment reversed on the law and a new trial granted, with costs to appellant to abide the event. Appeal from order denying a new trial dismissed, there being no order printed in the record.