## DENTON v. TRAVELERS INS. CO.
### No. 6427.

District Court, D. Maryland.
Dec. 1, 1938.

Arthur U. Hooper and John Geo. Vogeler, both of Baltimore, Md., for plaintiff.

William L. Marbury, Jr., and Marbury, Gosnell & Williams, all of Baltimore, Md., for defendant.

CHESNUT, District Judge.

The plaintiff, widow of William Stanley Denton, sues as beneficiary on a policy of accident insurance issued by the defendant to her husband, who died on December 28, 1937, from the effects of an anaesthetic administered during a tonsillectomy. The policy was issued on March 11, 1935, was in force and effect when the insured died, and provided for payment of $5,000 in the case of death "resulting directly and independently of all other causes from bodily injuries sustained during the term of this policy and effected solely through accidental means, subject to the provisions, conditions and limitations herein contained". The only provision, condition or limitation possibly applicable in this case is that which excluded liability for death "caused directly or indirectly wholly or partly by any kind of disease".

The case has been tried on the pleadings and testimony without a jury. Pursuant to the requirement of rule 52 of the new federal rules of civil procedure, 28 U.S.C.A. following section 723c, I have made and filed contemporaneously herewith separate findings of fact and conclusions of law; but, for the purpose of discussion, the cause and surrounding circumstances of the insured's death may be briefly again stated.

The insured's tonsillectomy was being performed by a competent surgeon at a well known hospital and the ether anaesthetic was being carefully and competently administered, in accordance with usual practice in such cases, by an experienced assistant. Shortly before the operation the insured's physical condition was carefully examined by an experienced diagnostician and there seemed no reason to anticipate that he could not safely withstand the operation. Other than infected tonsils and some hypothyroidism (meaning that the waste products of the body were not being consumed as rapidly as normal), he was in general good health. He was 28 years old. The medical testimony was to the effect that the insured had an idiosyncrasy for ether. This meant that the ordinary and usual amount of ether administered was too much for him. The result was that the nerve centers in the brain which control breathing were affected to an abnormal degree. It is the purpose of administration of ether to affect the nerve centers of the brain sufficiently to stop conscious muscular action, and thus to bring about a condition of relaxation in the patient, but not to affect those nerve centers which control subconscious body functions, including respiration. In the particular case the amount of ether administered, although usual and customary for a man of the apparent physical condition of the insured, proved sufficient to stop the functioning of the nerve centers which control respiration so that the patient's breathing stopped although his heart action was good at the time. Artificial respiration administered for an hour failed to revive him.

On the facts the case is not distinguishable from the Dodge Case in this Circuit, Mutual Life Ins. Co. v. Dodge,

4 Cir., 11 F.2d 486, 59 A.L.R. 1290, where the insured died from the effects of novacaine during a surgical operation and recovery on the policy was allowed. The legal question presented is also of the same type as the very recent case of American National Insurance Co. v. Belch, 4 Cir., 100 F.2d 48, in this Circuit, November 29, 1938, where the insured voluntarily giving his blood for a transfusion, died as a result of shock, from the puncture of his arm, and recovery was also allowed; and is similar to Landress v. Phoenix Insurance Co., 291 U.S. 491, 54 S.Ct. 461, 78 L.Ed. 934, 90 A.L.R. 1382, where the insured died from a sunstroke while playing golf, and recovery was denied. It differs, however, from the Dodge and Landress Cases in that they were decided (before Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, and Ruhlin v. New York Life Ins. Co., 304 U.S. 202, 58 S.Ct. 860, 82 L.Ed. 1290) on the authority of the general law evidenced by federal decisions; while the Belch Case, the decision of which was subsequent to Erie R. Co. v. Tompkins, supra, was necessarily decided under the law of Virginia; and this case must be decided in accordance with the law of New York where the policy was delivered and first took effect. Counsel for both parties are in agreement on this but differ as to the effect of the New York cases. While this case has been tried in the federal court for the District of Maryland, it is the New York law that must be here applied because the policy is a New York contract; and both by the Maryland decisions (Sun Insurance Office v. Mallick, 160 Md. 71, 81, 153 A. 35), and by the general law (Mutual Life Ins. Co. v. Johnson, 293 U.S. 335, 339, 55 S.Ct. 154, 79 L.Ed. 398; Northwestern Mut. Life Ins. Co. v. McCue, 223 U.S. 234, 32 S.Ct. 220, 56 L.Ed. 419, 38 L.R.A.,N.S., 57) the policy in this case must be construed and applied in accordance with the law of the State where it was delivered and took effect. Myers v. Ocean Accident & Guarantee Corp., 4 Cir., 99 F. 2d 485, Oct. 10, 1938.

■ After reading the New York cases I have no doubt that by them the plaintiff is entitled to recover in this case. As the particular point has so recently been fully considered and ruled upon in the Belch Case, supra, in this Circuit, it will be sufficient to very briefly discuss the applicable law. The question is whether the insured's death was due to *accidental means* or was only an *accidental result*. This question of accident insurance law has been considered by the courts in many cases in recent years, and they are widely divided in their view as to whether the wording of the policy, which limits the liability of the company to cases of injury or death resulting from "external violent and accidental *means*", in legal effect excludes liability where there is only an accidental *result*. Some courts make the distinction between accidental *means* and accidental *result;* and accordingly deny recovery in such cases as this, where they find the *result* was accidental but the means *not;* while others hold that there is no such difference in common speech and therefore none under the wording of these policies which are generally spoken of as accident insurance policies, and therefore permit recovery. In the instant case the policy is conspicuously referred to as a "Modern Accident Policy".

Western Commercial Travelers' Ass'n v. Smith, 8 Cir., 85 F. 401, 40 L.R.A. 653, and Mutual Life Ins. Co. v. Dodge, 4 Cir., 11 F.2d 486, 59 A.L.R. 1290, are leading cases supporting the latter view; while Landress v. Phoenix Insurance Co., 291 U.S. 491, 54 S.Ct. 461, 78 L.Ed. 934, 90 A.L.R. 1382, is the most authoritative expression of the former view. In the latter opinion the Dodge Case is cited with apparent disapproval. If this case were to be decided on the authority of the general law I should follow the Landress Case, and hold the insurer not liable. But, as already stated, the instant case must be decided not on the weight of authority under general law but on the rule deducible from the New York cases. Before turning to them, it is significant to note that in the Landress Case, Mr. Justice Cardozo, long a member of the Court of Appeals of New York, filed a dissenting opinion to the effect that there was no proper distinction to be made between accidental means and accidental result, and supporting his view in part by reference to the New York cases of Silverstein v. Metropolitan Life Ins. Co., 254 N.Y. 81, 171 N.E. 914, and Lewis v. Ocean Accident & Guarantee Corp., 224 N.Y. 18, 21, 120 N.E. 56, 7 A.L. R. 1129, and also citing with approval Mutual Life Ins. Co. v. Dodge, 4 Cir., 11 F.2d 486, 59 A.L.R. 1290. The essential difference between the two points of view is distinctly brought out in two short quotations from the Landress Case, one from the opinion of Mr. Justice Stone for the

Court, and the other in the dissenting opinion of Mr. Justice Cardozo. The former said [page 495]:

"But it is not enough, to establish liability under these clauses, that the death or injury was accidental in the understanding of the average man—that the result of the exposure 'was something unforeseen, unsuspected, extraordinary, an unlooked for mishap, and so an accident,' see Lewis v. Ocean Accident & Guarantee Corp., 224 N.Y. 18, 21, 120 N.E. 56, 57, 7 A.L.R. 1129; see, also, Aetna Life Ins. Co. v. Portland Gas & Coke Co. [9 Cir.], 229 F. 552, L.R.A.1916D, 1027, for here the carefully chosen words defining liability distinguish between the result and the external means which produces it. The insurance is not against an accidental result."

Contrasted with this is the reasoning of Mr. Justice Cardozo as follows:

"A cause does not cease to be violent and external because the insured has an idiosyncratic condition of mind or body predisposing him to injury. Silverstein v. Metropolitan Life Ins. Co., 254 N.Y. 81, 171 N.E. 914; * * *. When a man has died in such a way that his death is spoken of as an accident, he has died because of an accident, and hence by accidental means. So courts of high authority have held." Citing among others, Mutual Life Ins. Co. v. Dodge, 4 Cir., 11 F.2d 486, 59 A.L.R. 1290.

The latest decision of the New York Court of Appeals is Mansbacher v. Prudential Ins. Co., 273 N.Y. 140, 7 N.E.2d 18, 111 A.L.R. 618 (March 9, 1937) the opinion being by Chief Justice Crane. In that case, where the insuring clause of the policy was similar to that in the instant case, the insured died as a result of taking what proved to be an overdose of veronal, and the lower court had found that the circumstances did not show suicide. In the opinion it was said [page 19]:

"The insurance company now emphasizes the words 'accidental means,' and would have an exception drawn between 'accidental death' and 'death caused by accidental means' as though any ordinary person seeking a $2,000 policy would understand this logomachy. The large type letters refer to accidental death, and the attention of the insured by the signs and pointings of the company is directed to accidental death. The company now says that this policy does not refer to accidental

death; that it has not insured against accidental death; that the accidental death must be caused by an accidental means. * * * Accidental death means death by accident, and excludes suicide; death occurring through 'accidental means' in this case and under these circumstances is the same as death occurring 'by means of an accident.' * * * His death was accidental and, as we use those words in common parlance, we would speak of it as an accidental death. Contracts are to be interpreted in the light of the language which we commonly use and understand; in other words, our common speech. Such at least should be the rule applied to the interpretation of these policies, and which we sometimes refer to as a liberal construction. * * * The authorities in this state sustain this conclusion. Lewis v. Ocean Accident & Guarantee Corp., 224 N.Y. 18, 120 N.E. 56, 7 A.L.R. 1129, where the puncturing of a pimple on the insured's lips causing death was held to be death by accidental means. Infection resulting from the use of a hypodermic needle was held to be caused by accidental means. Marchi v. Aetna Life Ins. Co., 205 N.Y. 606, 98 N.E. 1108; Townsend v. Commercial Travelers' Mut. Accident Ass'n, 231 N.Y. 148, 131 N.E. 871, 17 A.L.R. 1001. Unexpected consequences may constitute accidental means. See, also, Gallagher v. Fidelity & Casualty Co., 163 App.Div. 556, 148 N.Y.S. 1016, affirmed 221 N.Y. 664, 117 N.E. 1067. This was death caused by sunstroke, and it was claimed that as the deceased had voluntarily submitted himself to the heat of the sun it was not an accidental means. The courts discarded such strained interpretation and quoted from Richards on the Law of Insurance (3d Ed.) (§ 385), wherein it was said that accidental means are those which produce effects which are not their natural and probable consequences." See also the late cases in the Appellate Division of Burch v. Prudential Ins. Co., 250 App.Div. 450, 294 N.Y.S. 458, and Meyer v. New York Life Ins. Co., 249 App. Div. 243, 291 N.Y.S. 912.

The opinion in Lewis v. Ocean Accident & Guarantee Corp., 224 N.Y. 18, 120 N.E. 56, 7 A.L.R. 1129, was written by Judge Cardozo when a member of the New York Court. In that opinion he said [page 57]:

"But our point of view in fixing the meaning of this contract must not be that of the scientist. It must be that of the

average man. Brintons v. Turvey, supra [L.R.1905 A.C. 230]; Ismay, Imrie & Co. v. Williamson, L.R.1908 A.C. 437, 440. Such a man would say that the dire result, so tragically out of proportion to its trivial cause, was something unforeseen, unexpected, extraordinary, an unlooked-for mishap, and so an accident. This test—the one that is applied in the common speech of men—is also the test to be applied by courts." Citing with approval among other cases Western Commercial Travelers' Ass'n v. Smith, 8 Cir., 85 F. 401, 40 L.R.A. 653.

The opinion in Silverstein v. Metropolitan Life Ins. Co., 254 N.Y. 81, 171 N.E. 914, was also written by Judge Cardozo when Chief Judge of that court. In that case the insured had a dormant duodenal ulcer of which he was unaware. An accidental blow caused its perforation resulting in peritonitis and death. The policy covered death by accidental means but excluded liability caused wholly or partly by disease or bodily infirmity. In holding that the beneficiary could recover on the policy and that the insured's condition did not constitute a disease, it was said in the opinion [page 915]:

"A distinction, then, is to be drawn between a morbid or abnormal condition of such quality or degree that in its natural and probable development it may be expected to be a source of mischief, in which event it may fairly be described as a disease or an infirmity, and a condition abnormal or unsound when tested by a standard of perfection, yet so remote in its potential mischief that common speech would call it not disease or infirmity, but at most a predisposing tendency."

The opinion also quotes with approval from Judge Parker's opinion in the Dodge Case, and that of Chief Justice Rugg of the Massachusetts Court in Leland v. United Commercial Travelers, 233 Mass. 558, 124 N.E. 517, the latter as follows:

" 'If there is no active disease, but merely a frail general condition, so that powers of resistance are easily overcome, or merely a tendency to disease which is started up and made operative, whereby death results, then there may be recovery even though the accident would not have caused that effect upon a healthy person in a normal state.' "

In McMartin v. Fidelity & Casualty Co., 264 N.Y. 220, 190 N.E. 414, the opinion by Judge Crouch expressly approves the prior Silverstein Case, and adds [page 415]:

"As a pendant to the opinion in the Silverstein Case, it is appropriate to paraphrase as follows a recent statement of the rule by Mr. Justice Cardozo: Under a policy phrased as this one, the insurer may be relieved of liability if an idiosyncratic condition of mind or body predisposing the insured to injury is so acute as to constitute a disease. Landress v. Phoenix Mut. Life Ins. Co., [291 U.S. 491], 54 S. Ct. 461, 78 L.Ed. 934, [90 A.L.R. 1382], March 5, 1934, dissenting opinion. 'The disease or the infirmity must be so considerable or significant that it would be characterized as disease or infirmity in the common speech of men; * * * of such quality or degree that in its natural and probable development it may be expected to be a source of mischief.' Silverstein v. Metropolitan Life Ins. Co., supra, page 84 of 254 N.Y., 171 N.E. 914, 915."

Counsel for the defendant in this case has cited a number of decisions of lower New York Courts (prior to the Mansbacher Case) dealing with factual situations which it is said are more closely similar to the instant case than those involved in the decisions of the New York Court of Appeals which have been referred to, and it is his contention that the reasoning in the opinions of the New York Court of Appeals should not be applied to this case in view of the alleged dissimilarity of the facts. The principal cases referred to in this connection are Appel v. Aetna Life Ins. Co., 86 App.Div. 83, 83 N.Y.S. 238; affirmed 180 N.Y. 514, 72 N.E. 1139 (without opinion); Barnstead v. Commercial Travelers' Ass'n, 204 App.Div. 473, 198 N.Y.S. 416; Gould v. Travelers' Ins. Co., 244 App.Div. 274, 279 N.Y.S. 892, affirmed without opinion, 270 N.Y. 584, 1 N.E.2d 341, and Mulholland v. Prudential Life Ins. Co., 155 Misc. 718, 280 N.Y.S. 322. But after reading these I am unable to reach the conclusion that they can properly be considered to avoid the applicability of the reasoning of the Court of Appeals to this case; even though as pointed out, some of these lower court cases have quite recently been cited with approval in other New York cases in the lower courts, as in McQuade v. Prudential Life Ins. Co., 2 N.Y.S.2d 647, and Nellenback v. Metropolitan Life Ins. Co., 3 N.Y.S.2d 657. Most of the cases so relied upon by defendant's counsel are reviewed and explained in the opinion for the Appellate

Division in the Mansbacher Case, Mansbacher v. Prudential Ins. Co., 247 App.Div. 378, 380, 381, 287 N.Y.S. 486 approved by the Court of Appeals, 273 N.Y. 140, 7 N. E.2d 18, 111 A.L.R. 618. It is there pointed out that they involved cases where the death was due to some internal disorder which really amounted to a disease. In the instant case the insured's idiosyncrasy to ether did not constitute a disease within the meaning of the word as interpreted in the Silverstein and McMartin Cases, supra. See, also, on this point the Dodge Case, supra. It is significant also to note that the reasoning of the New York Court of Appeals is very similar to that of the Virginia court in Ocean Accident & Guarantee Corp. v. Glover, 165 Va. 283, 182 S.E. 221, which was carefully considered and followed in the recent Belch Case in this Circuit, applying the law of Virginia.

I therefore conclude that the plaintiff is entitled to recover the full amount of the policy—$5,000—with interest at six per cent. from the time the cause of action accrued.